MAHLON MANDEVILLE, Respondent, *v.* SCHUYLER C. REYNOLDS, Appellant.

In an action upon a judgment, in case the judgment roll has been lost or destroyed, secondary evidence may be given of its contents.

It being the duty of the county clerk to have and keep the roll on deposit in his office (Code, §§ 281, 282), if it cannot be found in the particular place provided for such deposit, the presumption is that it is lost or destroyed.

Statement of case.

Where a lost paper, which was the basis of ·official action, was of a kind usually drawn up in accordance with a statute, and usually following a printed form devised therefor, it is to be presumed that the paper was in the usual form, and followed the requirements of the statute.

An attorney is not authorized by his retainer, to satisfy a judgment without payment, or to compromise or release the same ; nor can he settle a suit and conclude his client in relation to the subject in litigation without consent of the latter.

In an action under the Code, where the action or defence is based upon a judgment or other judicial record, the record may be attacked and impeached for fraud or for collusion, with knowledge and in disregard of the rights of the party attacking it; such party is not bound to resort to an action or proceeding direct for the purpose of avoiding the record.

The language of the Revised Statutes in relation to the docketing and satisfaction of judgments (2 R. S., 362, § 26), to the effect that a judgment shall be deemed satisfied to the amount returned collected on an execution issued thereon "unless such return shall .be vacated by the court," does not, under the Code, require a vacation to be sought by motion or action directly to that end; and in an action on a judgment, defended upon the ground of an entry of satisfaction, the satisfaction may be attacked for collusion or fraud, and a judgment for the plaintiff is as effectual a *vacatur*, as if one had been obtained in a direct proceeding.

In an action upon a judgment alleged to have been recovered by confession, after proof that the judgment roll could not be found in the county clerk's office, the "judgment book" required to be kept by the county clerk for the entry of judgments (Code, §§ 279, 280) was produced, which contained an entry of a judgment in the Supreme Court in favor of plaintiff's assignor against defendant, as follows : "Judgment, October 4, 1853; on filing of this statement and confession it is adjudged by the court that the plaintiff do recover of the defendant the sum of $2,346 damages, and $5 costs." The clerk who entered the judgment testified that he had no recollection of the case, but that he would have made no entry without something before him to found it on. The docket of judgments was also produced, in which the judgment was regularly entered. Plaintiff testified that, just prior to the date of said judgment defendant, told him that he was about to make a confession of judgment in favor of said assignor on old matters, and it was proved that defendant afterwards recognized the judgment as existing and valid. *Held*, that the evidence was sufficient to establish that at the time of the entry in the judgment book there was a roll or statement, which authorized the entry of a judgment by confession, and that it was for money due.

*Leland* v. *Cameron* (31 N. Y., 115) distinguished.

Also, *held*, that declarations of defendant that there had been a judgment confessed for a pre-existing debt were competent.

D., who had been the attorney of plaintiff in a former action to enforce

the judgment, after he had testified as a witness for plaintiff that he did not recollect that he had ever seen the roll, was shown certain letters written by him, containing statements referring to the roll, to the facts stated therein, and to the affidavit of defendant attached thereto ; these statements were read aloud in the hearing of the court and jury, without objection, and the witness was then asked if they were correct ; this was objected to, overruled and exception taken. The witness answered that he supposed them correct at the time. *Held*, that the evidence was properly received ; that the letters were to be considered as memoranda made at or near the time when the attorney became possessed of the facts narrated; and that it would have been permissible to have read those portions of the letters themselves in evidence.

The assignment to plaintiff of the judgment was in 1854. Defendant proved an assignment of it from H., plaintiff's assignor, to E., executed in 1855, to which plaintiff was a subscribing witness, and a satisfaction-piece from E., acknowledged in 1856 ; also an execution upon the judgment, signed by the attorneys who procured it, dated in 1867, upon which was indorsed a direction to the sheriff to return the same satisfied, signed by said attorneys, and a return in accordance with such direction signed by the sheriff; also an entry in the docket of judgments following the entry of the judgment, as follows : "*fi. fa.* returned satisfied." Defendant also read in evidence an order entitled in an action by the plaintiff, against the defendant herein, dated in 1869, to the effect that upon filing stipulation of the attorneys for the parties, and upon their consent in open court, it was ordered that the entry of satisfaction of said judgment be ratified and confirmed. Plaintiff gave evidence showing that the second assignment was drawn by, and executed in compliance with the suggestion of, defendant, for the convenience of the parties, so that the assignee might act as plaintiff's agent to receive payment during plaintiff's contemplated absence, all the parties having knowledge of the prior assignment ; that the assignee was not authorized to arrange the matter save upon payment of the judgment in full; that plaintiff never authorized the issuing of an execution; that, it and the indorsements upon it were in defendant's handwriting, although signed by the attorneys of record, and that nothing was ever paid by defendant for the satisfaction of, or upon the judgment. *Held*, that the attorney had no authority to direct the return of the execution unsatisfied, or to compromise and release the judgment, and the fact that the compromise was put into the form of a stipulation, and an order entered thereon, gave it no greater efficacy; nor had the second assignee authority to give satisfaction without payment in full.

Also, *held*, that the satisfaction entered upon the docket of the judgment and the order entered upon the stipulation and consent of the attorneys could be impeached and avoided in this action.

(Argued February 2, 1877 ; decided February 23, 1877.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department, affirming a judgment in favor of plaintiff entered upon a verdict.

This action was upon a judgment alleged to have been rendered and perfected in favor of Henry W. Mandeville, " upon the confession of the defendant," and duly assigned by said Mandeville to plaintiff.

The facts appear sufficiently in the opinion.

*J. Maguire* for the appellant. There was no sufficient evidence of the judgment to warrant a recovery. (*Dickinson* v. *Smith*, 25 Barb., 102; *Townsend* v. *Wesson*, 4 Duer., 342, 353, 354; 9 Wheat., 581–700; 3 N. Y., 424–430; C. & H. Notes, 1067, 1068, 1234.) The court erred in admitting proof of the declarations of defendant that he had confessed a judgment. (1 Phil. Ev., note 168 [ed. 1868]; id., 478; *Inman* v. *Jolliff*, 6 J. R., 9; *McNett* v. *Johnson*, 7 id., 19; *Hasbrouck* v. *Baker*, 10 id., 248; *Sizer* v. *Burt*, 4 Den., 428; *Nichols* v. *Kingdom Iron Ore Co.*, 10 Alb. L. J., 266.) The party in whose favor a judgment has been rendered may employ any other attorney than the one who obtained it, to issue the execution. (5 Cow., 446; 1 Duer., 679.) The authority of an attorney to appear in a suit or issue process cannot be shown collaterally. (18 Abb. Pr., 336.) No record can be attacked or impeached collaterally. (*Allen* v. *Martin*, 10 Wend., 301; 3 id., 202; 14 J. R., 431; *Sperling* v. *Levy*, 10 Abb., 426; 1 Daly, 95; *Romain* v. *Garth*, 5 N. Y. S. C. R., 361.) The order made at Special Term ratifying and confirming the satisfaction of the judgment cannot be disregarded and held collaterally void. (1 Chit. Pl., 354; 16 J. R., 55; 44 Barb., 132; 10 Mass., 478, 313; 9 id., 96; 17 id., 433; 13 Pick., 477; 3 Littell [Ky.], 129.)

*Marcus Lyon* for the respondent. The legal presumption is, that the clerk did his duty. (*Jackson* v. *Cole*, 4 Cow., 587; *Hartwell* v. *Root*, 19 J. R., 345; *Wood* v. *Morehouse*, 45 N. Y., 376; *Leland* v. *Cameron*, 31 id., 115.) The assignment

of the judgment to plaintiff's sister, Elizabeth, had the effect of a power of attorney. (*De Mets* v. *Dagron*, 53 N. Y., 636.) The satisfaction of the judgment being fraudulent was no defence. (*Jackson* v. *Jackson*, 1 J. R., 433; *Borden* v. *Fitch*, 15 id., 145, 146; *Lownds* v. *Remsen*, 7 Wend., 41; *Forbes* v. *Waller*, 25 N. Y., 438; *Dobson* v. *Pearce*, 12 id., 165; *State of Michigan* v. *Phœ. Bk.*, 33 id., 25–27; *N. Y. Ex. Co.* v. *De Wolf*, 31 id., 273; *Stone* v. *Scripture*, 4 Lans., 192.) The entry of satisfaction upon the docket by return of execution satisfied was not a satisfaction of the judgment. (*Lownds* v. *Remsen*, 7 Wend., 37, 40, 41; *Booth* v. *F. and M. Bk.*, 4 Lans., 309, 310; 50 N. Y., 401; *Taylor* v. *Ranney*, 4 Hill, 619, 622; *Jackson* v. *Benedict*, 13 J. R., 533; 2 R. S. [Edm's 2d ed.], 373; 5 id., 716, appendix; *Anderson* v. *Nicholas*, 4 Robt., 630, 634; *Warden* v. *Eden*, 2 J. Cas., 258; *Barnes* v. *Carmack*, 1 Barb., 396, 397; *Stilwell* v. *Carpenter*, 59 N. Y., 423; *Smith* v. *Nelson*, 62 id., 288, 289.) It was not necessary, in order to maintain this action as brought, that the return of the execution by the sheriff should be vacated, or that the order entered upon stipulation ratifying said return should be vacated, but, if necessary, it could be done in this action. (*Dobson* v. *Pearce*, 12 N. Y., 165, 166; *Crary* v. *Goodman*, id., 266, 268; *Phillips* v. *Gorham*, 17 id., 270; *Corn Exch. Ins. Co.* v. *Babcock*, 42 id., 646–648; *Pitcher* v. *Hennessey*, 48 id., 416, 422, 423; *Van Deusen* v. *Sweet*, 51 id., 378, 383, 384; *Wright* v. *Wright*, 54 id., 442, 444; *Dambman* v. *Schulting*, 4 Hun., 50.) An attorney may discontinue an action, but cannot release the cause of action or vacate a judgment without payment in full, without the knowledge and consent of his client. (*Gaillard* v. *Smart*, 6 Cow., 383; *Quinn* v. *Lloyd*, 5 Abb. Pr. [N. S.], 281; *Yates* v. *Horanson*, 7 Robt., 12, 16; *Lewis* v. *Woodruff*, 15 How. Pr., 539; *Carstens* v. *Barrestorf*, 11 Abb. Pr. [N. S.], 442; *Beers* v. *Hendrickson*, 45 N. Y., 665; *Barrett* v *Third Ave. R. R. Co.*, id., 628.)

FOLGER, J. This is an action upon a judgment recovered by Henry W. Mandeville against Schuyler C. Reynolds, the

defendant in this action, by the confession of the defendant, in the Supreme Court of this State, for $2,351, and docketed in Chemung county clerk's office, October 4, 1853.

The first question for our consideration arises upon the fact that the plaintiff was unable to produce, upon the trial, the judgment roll upon which the judgment was entered and docketed. It was incumbent upon him to do this if it was not lost or destroyed. If it was lost or destroyed he had the same right to give secondary evidence of the contents of it as in the case of any other instrument in writing incapable of production for those reasons; (*Renner* v. *P. D. and Co. Bk. of Col.*, 9 Wheat., 581; *Leland* v. *Cameron*, 31 N. Y., 115.) This was a paper which it was the duty of the county clerk to have and to keep on deposit, in his official possession, at his public office; (Code, §§ 281, 282.) In such case, if the paper is not found in the particular place provided for the deposit of it, the presumption is that it is lost or destroyed; (*Rex* v. *Stourbridge*, 8 B. & C., 96.)

In accordance with this rule John G. Copley, the county clerk of Chemung county, was called as a witness, and testified that he had made diligent search in the clerk's office, and had been unable to find the paper. This testimony warranted the presumption above stated, and made a case for the introduction of secondary evidence of the former existence of the paper and of its contents. Of which evidence it is to be said that, it must be the best that the party has in his power, while every case must depend in a great measure upon its own circumstances; (9 Wheat., *supra.*) The evidence which was given to prove the prior existence of the paper was this: A. F. Babcock, who was the county clerk of Chemung, for a period including the date of the docketing of the judgment, was shown a book, produced by Copley from the clerk's office; it was a book known in the clerk's office and to these two witnesses as " Judgment Book No. 3;" it was a book required by law to be kept by the clerk, among the records of the Supreme Court, for the entry of judgments, and in which every judgment should be entered, and should specify clearly

the relief granted; (Code, §§ 279, 280.) In that book was entered, as we may infer in its due succession and place, the following: " Supreme Court. *Henry W. Mandeville* against *Schuyler C. Reynolds.* Judgment October 4th, 1853. On filing of this statement and confession, it is adjudged by the court that the plaintiff do recover against the defendant the sum of $2,346 damages and $5 costs, amounting in all to $2,351. October 4th, 1853." The witness Babcock testified that this order, so entered in this book, was in his handwriting, while he was clerk; that while he had no recollection of the case he should have made no entry without he had something to found it on — without something before him. This, indeed, would be a presumption of law, without his testimony, for the presumption is, that no official person, acting under oath of office, will do aught which it is against his official duty to do, or will omit to do aught which his official duty requires should be done; (*Lazier* v. *Westcott,* 26 N. Y., 146; *Bk. of U. S.* v. *Dandridge,* 12 Wheat., 64.) There was, also, produced in evidence, by the witness Copley, the docket of judgments, a book required by law to be kept in the clerk's office (Code, § 282), on which it appeared as follows, as we may infer in its due succession and place: "*Henry W. Mandeville* against *Schuyler C. Reynolds,* for $2,351; Patterson & Gillett attorneys; Chemung county, October 4th, 1853, one and a half, p. m.," and something more to be noticed hereafter. The plaintiff testified that the defendant told him that he was about to make a confession of judgment in favor of Henry W. Mandeville, on old matters; that there were other parties pressing him and he wanted to secure Henry W. first; that the defendant recognized the judgment as existing and valid several times afterwards, which is amply shown by other testimony; that the defendant, who it had been proven was before, at and after, the date of this judgment, a deputy to the county clerk, showed him the docket of this judgment and gave to witness a copy thereof. I think that this testimony is ample to show that there was at the date of the judgment some roll or statement sufficient to authorize the

order in the judgment book and the entry upon the docket.
Apart from the violent presumption that the clerk would
not have done the official acts of entering the order and of
docketing the judgment without the roll or statement war-
ranting it, there is the anticipatory declaration of the defend-
ant of his purpose to have a judgment against him in favor of
Henry W., and his recognition of the regular and valid docket-
ing of it. The presumption is ready and strong that 'he was
aware of some formal act done or suffered by him, which gave
the authority for the docketing. That formal act could be
nothing but a confession by him, or service of process upon
him. I think that the existence of some roll or statement is
fully made out; I think, too, that it was a roll or statement
made up upon a confession of judgment. Such was the effect
of the declarations of the defendant, that he was "going to
make a confession of judgment." Babcock, the ex-clerk, tes-
tifies that it must have been a confession, or he would not
have entered it. Besides that, it is to be observed that the
amount of costs was but five dollars, which was the full sum
then allowed for obtaining a judgment by confession, and was
less than that allowed by any other mode; (Code, § 384.) To
be sure, there is no charge for disbursements, which that sec-
tion also gave a right to. There are several things which
occur to my mind why there were no disbursements to which
the plaintiff's attorneys could make affidavit, but I will not now
name them. I think it is fairly inferrable from the testimony
that here was a roll or statement for the entry of a judgment
on confession, and also, there is testimony that it was for
money due. The defendant said, before making it, it was on
old matters, and spoke of them as for debts which were then
due and payable. When showing the judgment on the docket
and giving a copy of it, he did not qualify its apparent effect,
as of a judgment then at once collectible; and afterwards he
effected an assignment or assignments of it, so as to render
more convenient the payment of it; and to the last act of
getting a satisfaction of it, treated it as due and enforceable
against him.

I am aware that, in cases where the lost paper is not to be put in a class, for which the requirements of some statute has prescribed the substantial form and contents, there may be no satisfactory proof of contents, save by one who has possessed himself of the whole of the contents and is able to give them forth generally and substantially; (*Sizer* v. *Burt*, 4 Denio, 428.) But in a case where the lost paper is of a kind which is usually drawn up in accordance with a statute, and usually follows a form devised for that kind of instrument — so much so that the form is put into type, and printed copies are furnished to attorneys — we may from the circumstances infer that the attorneys who had the drafting of it would not have made any but a paper in legal form and substance, and that those who had to base their official action upon it would not have proceeded by virtue of it had it not, to their judgment and scrutiny, been agreeable in its contents to the requirements of the statutes. So it was in the case of an execution lost in *Leland* v. *Cameron* (31 N. Y., 115). There the contents of the execution were held to be shown to the court on no more than the entry in the register of the attorney who, it was claimed, issued it, and upon the presumption that the sheriff who, upon the strength of that entry, was assumed to have received it, would not have executed the command of it to sell real estate, if it had not been in legal and proper form to have required of him, and to have justified him, to perform that act as one of official duty.

So I conclude that there was once filed in the Chemung county clerk's office a roll or statement which authorized the entry of that order in the judgment book, and the entry upon the docket of judgments of a judgment confessed by the defendant to Henry W. Mandeville, on the day and to the amount given in the docket and order.

It is claimed that the declarations of the defendant that there had been a judgment confessed, and that for a pre-existing debt, were not admissible as evidence on the question. The cases cited by the defendant are where the paper on which the action was based was still in existence and could

have been produced.   It may well be that in such case the admissions of the party to be charged by virtue of it will not be allowed in place of the paper itself.   The other party does not bring the best evidence in his power.   Here it was shown that the paper was lost or destroyed.   Secondary evidence, evidence by parol, the best which the plaintiff could get, was admissible.   The defendant might have been made to testify as to his knowledge derived as defendant and as deputy county clerk, as to the existence and contents of the lost instrument.   Being a party to this action, proof of his declarations on this topic was as admissible as proof by his statements as a sworn witness.   And here it is not amiss to notice that the defendant was not put upon the witness stand by his counsel — the defendant — who, of all, could have negatived, if negation had been truth, the testimony given as to the lost statement.

I have not referred yet to the testimony of Mr. Dailey, once the attorney of this plaintiff in a former action to enforce this judgment.   He was shown certain letters written by him. They did contain statements which referred to the judgment roll in that judgment, and to the facts stated in it, and to the affidavit of the defendant, sworn to and attached to the roll, as being contradictory to statements about that time made by the defendant.   Yet Mr. Dailey did not recollect that he had ever seen the roll.   There was no objection made to Mr. Dailey being called as a witness, nor to the letters being shown to him, nor to the expressions used in them being read aloud in hearing of the court and jury.   The witness was then asked if the representations contained in them were correct.   To this objection was made and overruled, and exception taken. The answer was : I supposed them to be at the time.   The letters were not used as evidence, otherwise than has been stated.

I think that we may infer that the letters were written at the time that Mr. Dailey was in charge of the action for the plaintiff, and was in treaty with the defendant, and at the time when he was acquiring, or had just acquired, knowledge

of the facts in the case. The letters, then, fall into the category of memoranda made by a person at or near the time when he becomes possessed of the facts which they narrate. It was proper in such case, when he denied recollection of the roll or statement, to show the memoranda to him, and learn if they stimulated his recollection. They did not stimulate his recollection, and it was not wrong then to ask him if what they stated was correct. For in case they did state what was correct, and were made at or near the time when the material facts to which they relate occurred, or were brought positively to the knowledge of the witness, whose work the memoranda were, though he could not recollect the facts stated in them, it was permissible to read the letters themselves in evidence, so far as they related to the matters in issue; (*Halsey* v. *Sinsebaugh*, 15 N. Y., 485; *McCormick* v. *Penn. Cent. R. R. Co.*, 49 id., 303.) The question objected to went no further than to test the correctness of the statements made in the letters when written. As we have seen, it was not an objectionable question.

The plaintiff proved and read an unrecorded assignment from Henry W. Mandeville to him, of the judgment in suit. This assignment, by its terms, gave him the entire property in the judgment, and full control over it. It was without date. The testimony of the subscribing witness to the execution of it is to the effect that it was executed in 1854. The plaintiff then rested his case. The defendant then moved for a nonsuit; some of the questions raised thereby will be noticed further on. The motion being denied, the defendant proved and read an assignment from Henry W. to Elizabeth B. Mandeville, of this judgment in suit, dated 17th October, 1855, to which the plaintiff was a subscribing witness. The defendant showed a satisfaction-piece from this assignee, not dated, but the execution acknowledged 30th December, 1856. He then showed an execution issued to the sheriff of Chemung county, upon this judgment, signed by the attorneys who procured the judgment, dated February 6, 1867, with instruction to levy $2,351,

and interest from 4th October, 1851, etc. The indorsements upon the execution were: "Filed February 19, 1857. Satisfied, February 19, 1857. Wm. M. Gregg, sheriff. Execution to Chemung county; sheriff of Chemung county will return this execution satisfied. Patterson & Gillett, plaintiff's attorneys." The defendant then showed the same book of docket of judgment which had been produced by the plaintiff, and following the entry read therefrom by the plaintiff was this: "*Fi. fa.* returned satisfied, February 19, 1867." It is well in this conjunction to say that it is a conceded fact in the case, that nothing has ever been paid towards the satisfaction of the judgment. The defendant then read in evidence, from the entry in the order book of Chemung County Supreme Court clerk's office, an order, entitled in an action by the present plaintiff against the present defendant, dated 5th March, 1869, to the effect that upon filing a stipulation of the attorneys for the parties, and upon the consent of both attorneys, in open court, the action was dismissed, and the entry of satisfaction on the return of execution (just above given), was ratified and confirmed, and held valid and effectual.

On the state of facts as thus presented, the defendant moved again for a nonsuit, which was again refused.

There was, following this, evidence given on both sides, as to the assignment by Henry W. to Elizabeth B., his daughter; as to the issuing of the execution; and in relation to the conduct of the attorney and counsel for the plaintiff, in the action by the plaintiff against the defendant which was discontinued. The plaintiff's testimony went to show that the assignment to the daughter was made at the request of defendant, who drew the assignment, and merely as a convenience for all the parties, in case Reynolds was ever able to pay the execution; so that the daughter, being near at hand and while the plaintiff was in the southern States, might act as the agent of the plaintiff; to which arrangement Reynolds, the plaintiff in the judgment, and the daughter, were all assenting parties, all having knowledge of the prior assignment to the plaintiff;

that there was no power or authority in the daughter to arrange the matter short of a payment of the judgment in full; that the plaintiff never authorized the issuing of the execution; that it and the indorsements upon it were in the defendant's handwriting, though the attorneys of record signed it; and that the daughter had never received any thing in payment on the judgment, though she had given a satisfaction-piece of it, at the defendant's entreaty.

The defendant then asked the court to direct a verdict for him, which was denied. The court held as matter of law, that the attorneys of record of the plaintiff, of record in the judgment, had not authority or right to direct the sheriff to return the execution satisfied; that the daughter had not authority or right to give satisfaction without payment in full; and that Dailey and Mr. Hart who acted as counsel had not power to compromise the judgment and release the defendant, unless authority was expressly given to them by the plaintiff.

In holding thus, I think that the court was right. An attorney is not authorized by his retainer to satisfy a judgment without payment, and if he does so, the satisfaction will be set aside; (*Beers* v. *Hendrickson*, 45 N. Y., 665.) The authority of an attorney does not extend to a compromise or a release. He cannot settle a suit, and conclude his client in relation to the subject in litigation without consent of the latter; (*Barrett* v. *Third Av. R. R. Co.*, 45 N Y., 628.) It is true, that an attorney's power exists for a time after the entry of the judgment; a year and a day to issue execution, and do all things necessary for the collection and satisfaction of the judgment (*Lusk* v. *Hastings*, 1 Hill, 656); two years for the purpose of acknowledging satisfaction (2 R. S., 362, § 24); and he may, for the time his power continues, authorize the sheriff to depart from the regular and ordinary course of executing the execution; (*Corning* v. *Southland*, 3 Hill, 552.) But in this case the time for the exercise of the power of the attorneys of record had long gone by, and the direction on the execution was not to collect it in any way, but to make an untrue

return that it had been paid. That direction was without authority. So the act of Dailey as attorney, and of Hart of counsel, if the latter assented to it, were without authority. The fact that the compromise then made was put in the form of a stipulation, and that an order of court was entered as of course and by consent, gives it no greater sanctity or efficacy; (*Slocum* v. *Freeman*, 46 How., 437.) And so with the satisfaction from the daughter to the defendant. It was known to him, as well as to her, that the judgment was owned by the plaintiff, and that she had no authority, as provisional assignee, to receive, or agree to receive, less than payment in full.

The court left to the jury the single question, whether Mr. Dailey, as attorney of the plaintiff, and Mr. Hart as his counsel, had power or authority given to them by him, to make a settlement, or such disposition of the case as they in fact made, and the court instructed the jury to inquire whether any such special or express power was given. This instruction was excepted to. But it was substantially an inquiry of fact, in full accord with the rule of law as just above laid down.

The defendant asked the court to charge that if the assignment from Henry W. to his daughter was made with the intention of passing to her the title to the judgment, with the consent and approval of the plaintiff, then her satisfaction of the judgment was valid and effectual, and a bar to this action. As an abstract proposition, there is no need to question at this time the soundness of this request. It was merely an abstract proposition. The testimony would not permit the jury so to find, nor the court to instruct them so to inquire. The decisive preponderance of the evidence concerning that assignment was, that the four actors in making it, knew that the plaintiff was already the absolute owner of the judgment by a full assignment of it, and that the assignment to the daughter was made for a special purpose, not to transfer the title to it, but to make her a temporary depositary of it, who could act with seeming authority, when the time came at which the defend-

ant could pay the judgment. Doubtless, one more sensitive to the apparent fitness of things would have advised a power of attorney from the plaintiff to his sister. The defendant can take nothing from any blundering in that regard, for it was he who devised the plan and drew the paper.

The defendant made another request to charge which was denied, and which brings up this question : That the order of court entered upon the stipulation of Mr. Dailey, as plaintiff's attorney, and his consent in open court, was valid and effectual as a proceeding in that case, unless such order was first vacated or set aside, in a suit or proceeding direct to that end. By the motion for a nonsuit, the defendant also brings up the question whether the court erred in allowing the satisfaction, entered upon the docket of the judgment, to be attacked and impeached in a collateral action. Both of these points are addressed to one object. It is claimed that matters of record cannot be avoided by matter shown in a collateral action. It is not denied that the plaintiff might bring an action in equity to set aside the entry on the docket, and the order of the court confirmatory of it, for fraud in obtaining them, and that *ceteris paribus* the action might be successful.

It is claimed that in an action which is ostensibly based alone upon a judgment, and the defence to which is based upon a satisfaction of the judgment of record, and upon an order of court ratifying that satisfaction, there cannot be received in evidence and considered, replicatory matter show-ing that the entry upon the docket and the order, have been obtained by covin, collusion and imposition.

Before the system brought in by our Code of Procedure, it was a general ·rule that a judgment, and any other judicial record, was final and conclusive between parties and privies thereto. Even then, however, it was said that whenever an act was done *fraudum legis*, it could not be the basis of a suit in the courts of the country whose laws were attemped to be infringed ; (*Jackson* v. *Jackson*, 1 J. R., 424. But see *Kin-nier* v. *Kinnier*, 45 N. Y., 542, somewhat questioning that

case.) Fraud and imposition invalidate a judgment as they do all acts, and may be alleged, whenever the party seeks to avail himself of the results of his own fraudulent conduct by setting up the judgment the fruits of his fraud; (And see *Borden* v. *Fitch*, 15 J. R., 121.) It may be doubtful, too, whether the rule as to judgments of nonsuit, laid down in *Homes* v. *Brown* (16 How. [N. S.], -354–365) would not be applicable to the order by consent, relied upon by the defendant. It is quite certain, that so far as the sheriff's return of the execution satisfied is concerned, it does not stand, under the facts in the case, in the way of the suit of the plaintiff, or the issuing of a new execution by him; (*Codwise* v. *Field*, 9 J. R., 263, and cases cited in note [A], especially 1 Cow., 46.) Judgment obtained by fraud upon a court, binds not such court or any other, and its nullity upon that ground though it has not been set aside or reversed, may be alleged in a collateral proceeding; (*Webster* v. *Reid*, 11 How. [U. S.], 437; *Cammell* v. *Newell*, 3 H. & N., 617–646; see 26 N. Y., *supra*.) The precedents in Chitty on Pleading, (vol. 3, pp. 1166 and 1184), are of replications, to pleas of judgment got, and of compromise by rule of court, that they were obtained by fraud, covin and collusion. (See, also, *Shedden* v. *Patrick*, 1 Macq. H. of. L. Cases, p  .)

But the Code of Procedure has, by its enactments, taken away most, if not all, of the reasons of the rule which forbade the impeachment of a judgment collaterally. Now in an action at law, matter which was formerly of equitable cognizance solely, may be set up and given in evidence. As in ejectment, where the title of the plaintiff depends upon a deed or will, it may be averred and shown in defence, that it was obtained by fraud and undue influence. And so if in an action of ejectment, the defence rests upon a deed or will, the plaintiff can make proof that it was procured by fraud or other imposition; (*Phillips* v. *Gorham*, 17 N. Y., 270.) If there was an action at law upon a judgment, could not the defendant answer in pleading, and show in proof, that it was procured by fraud and imposition? (*Pendleton* v. *Weed*,

17 N. Y., 72.) So, then, if in action at law, on some cause of action to which a valid judgment would be a good defence, it were set up and proven, could not the plaintiff prove in reply, that it was got by the fraud or collusion of the defendant and others than the plaintiff? And collusion means, by consent or agreement of the parties to it; (45 N. Y., *supra*.) To which should be added, in knowledge and disregard of the rights of the party impeaching the result of it.

The court acts upon the matters involved in the action, now, in a double capacity, as a court of law, and one of equity. As a court of equity, it meets the question of the validity of the judgment, not as one of law, but as of equity, and takes hold of the facts offered to it, not as a collateral attack upon the judgment, but as a direct assault, which, by the changing nature of the issues in the progress of the suit and trial, has become the main question in the case and legitimately before it for trial. It would be quite an abnegation of the conjoint power and jurisdiction of the court, to proceed in the case as long as the issues were of legal cognizance, and as soon as they became of equitable cognizance, to turn the party over to another action, in, perchance, the same court, before the same judge, to have, in another trial, that matter proved and decided against the validity of the judgment, which, as the powers of the court are now in constant reciprocal activity, may as well be determined in one trial by the same tribunal. It is not merely that the same judges possess, in equal degrees, powers at law, and powers in equity. It is, that the distinction between actions at law and suits in equity, and the forms of such actions, are abolished; and that there is in this State but one form of action for the enforcement or protection of private rights, and the redress of private wrongs; (Code, § 669.) Nor does it differ that the matter of record brought into question is not a judgment, but an entry upon the docket thereof, or an order in a book in the clerk's office confirmatory of that entry. If, in the changes of the issues in a trial began as one at law, it become necessary for the just disposition of the rights of the litigants to inquire

whether that entry or that order is valid, the court is as ready then, and as fully has the jurisdiction then, to investigate and determine as if the trial was laid aside, a new action brought and another trial had, burdened also with the issue of validity. The intent of the Code is clear, that all controversies respecting the matter involved in litigation, shall be determined in one action. Whether fraud or imposition, in the entry of a judicial matter of record, could, before that enactment, have been set up against it collaterally at law or not, it may now be alleged against it, as an equitable defence to defeat a recovery upon it; (*Dobson* v. *Pearce*, 16 N. Y., 156.) Under the head of equitable defences are included all matters which would have before authorized an application to a Court of Chancery for relief against a legal liability, but which at law could not have been pleaded in bar. (Id.) That case continues to say : The question now is, ought the plaintiff to recover ? and any thing which shows that he ought not, is available to the defendant, whether it was formerly of legal or equitable cognizance. *E. converso*, any thing which shows that he is entitled to recover, and that the defence of the defendant ought not to prevail, is available to the plaintiff, whether it was formerly of legal or equitable conizance. And, says DAVIES, C. J., in *New York Central Insurance Company* v. *National Pro. Insurance Company* (14 N. Y., 85): "It was always theoretically unreasonable,  *  *  * that in one branch of the judiciary, the court should hold that the party prosecuted had no defence, and in another that the plaintiff had no right to recover. Now, when an action is prosecuted, we inquire whether, taking into consideration all the principles of law and equity bearing upon the case the plaintiff ought to recover." "It may be conceded," says COMSTOCK, J. (in 17 N. Y., *supra*), "that if a creditor having regularly entered one judgment, should intentionally procure another record to be signed and filed, with a view to procure a double satisfaction, or to gain some other advantage,  *  *  * the proceeding would be altogether void.  *  *  * The fraud would utterly vitiate that which,

if innocently and inadvertently done, might be allowed to stand where justice plainly required it." That there should not be a second suit for relief when it can be obtained by a defence in the first, is emphatically stated in *Savage* v. *Allen* (54 N. Y., 458); and see *McHenry* v. *Hazard* (45 id., 580–7).

I think it clear, that in many cases, the plaintiff may prove in the same action, in opposition to matter set up and proved by the defendant therein, that which before the Code he would have been obliged to have availed himself of by a suit in equity. Nor do I think that the phraseology of the Revised Statutes in relation to the docketing of judgments, and the entry of satisfaction, has the effect to create a difference. Those statutes (2 R. S., p. 362, § 26) say that the judgment shall be deemed satisfied to the amount returned collected on an execution; unless such return shall be vacated by the court. I do not think, that under the Code, this requires a *vacatur* to be sought by motion or action directly to that end, and to be actually entered upon the docket before it, or proof of matter warranting it, is available to the party suing upon the judgment. A judgment for a plaintiff, in an action upon a judgment, defended against upon the ground of an entry of satisfaction, and where the validity of the satisfaction is attacked by the plaintiff in reply, for covin or collusion or fraud, is as effectual a *vacatur* as if in a proceeding addressed directly to that end. As between plaintiff and defendant, in that action, it is sufficient, when established to the satisfaction of court and jury.

The defendant rested finally upon but one question of fact at the trial, which was correctly disposed of as appears above. So that the questions here, are those of law only. Upon them, I think that the learned judge at Circuit was correct.

The judgment should be affirmed.

All concur, except ALLEN, J., not voting; CHURCH, Ch. J. absent.

Judgment affirmed.