IN RE RECEIVERSHIP OF W. A. MAGNER.

R. O. WOODWARD, Receiver, Appellee, v. CARSON, PIRIE, SCOTT & COMPANY, Petitioner and Appellant.

RECEIVERS: Final Reports—Approval and Discharge—Notice and Hearing—Vacation of Order. An order approving the final report of a receiver and entering a discharge may be set aside, for the reason that no notice of the hearing on said report was served on interested creditors, even though no statute requires such notice.

RECEIVERS: Final Reports—Notice of Hearing—Evidence. Whether an order of court approving the final report of a receiver, made without any *formal* notice to an interested creditor of the filing of and hearing on said report, can be sustained on the theory that the creditor otherwise had *actual* notice of such filing and hearing, *quaere;* but evidence reviewed, and *held* that certain indefinite letters from a receiver did not show such actual notice.

RECEIVERS: Final Report—Approval—Vacating Order—Effect of Actual Notice. Actual notice to a creditor of the filing of and hearing on the final report of a receiver is not justification for the refusal of the court, on the application of such creditor, to set aside a *prima facie* erroneous order entered on said hearing.

RECEIVERS: Final Reports—Order of Approval—Frivolous Application to Vacate. Evidence reviewed, and *held* that an application to vacate and set aside the final report of a receiver and the order approving the same was not frivolous and should have been sustained.

RECEIVERS: Final Report—Approval—Vacation of Order—Failure to Account—Improvident Fees—Relief—Independent Action Unnecessary. A court that has jurisdiction to create a receivership has jurisdiction to grant adequate relief on the showing of a creditor (a) that the receiver has omitted to take .possession of all the assets of the debtor and to account for the same and (b) that, cn the approval of the receiver's final report, improvident allowances were made to the receiver for attorney fees. In other words, the creditor will not be driven to institute an independent action in equity (assuming equity to have concurrent jurisdiction).

RECEIVERS: Final Reports—Approval—Vacation—Failure to Account for Assets—Allowing Attorney Fees Without Evidence. It

is the duty of the court to set aside the final report of a receiver and the order approving the same when a creditor makes a prima-facie showing (a) that the receiver has failed to take possession of the assets of the debtor and to account for the same, and (b) that excessive attorney fees were allowed in the receivership, without evidence of the value of the services for which such fees were allowed.

*Appeal from Fayette District Court.*—A. N. HOBSON, Judge.

SATURDAY, DECEMBER 18, 1915.

. THIS is a complaint of the refusal of the court, at the instance of appellant, who is a creditor, to set aside the final report of the receiver, and to allow appellant to make objections to such report.—*Reversed and Remanded.*

*Grimm & Trewin* and *H. P. Hancock,* for appellant.

*E. H. Estey* and *W. J. Ainsworth,* for appellee.

SALINGER, J.—I. Appellant is a creditor of Magner, who listed his claim with, and was allowed it by, appellee, the receiver appointed on the application of Forrey, another creditor of Magner. Not enough was realized to pay the creditors in full. On January 31, 1912, the receiver filed final report and application to be discharged upon making final distribution. Approval was made and discharge upon distribution ordered, about January 31, 1912. No notice was ordered or given, unless what is claimed to be actual notice is such, and obviates the need of formal notice, if formal notice be required.

1. RECEIVERS: final reports: approval and discharge: notice and hearing: vacation of order.

On the 15th day of April, 1912, appellant filed petition to set aside said order of approval. It asserts that there was no jurisdiction to make said order because no notice was given, and asks permission to file stated objections to said final report. The objections are, in effect, that the report exhibits excessive expenditures, expenditures that could have been obviated, an exorbitant claim for the services of the receiver and of his attorneys, and that the attorney's claim should be

diminished by the amount of fees claimed to have been paid him, and that the receiver has rendered no account as to the collection and disposition of book accounts owing Magner and, therefore, to his estate. It is prayed that the report be set aside and the receiver required to file a supplemental report showing what has become of said book accounts,—whether or not the receiver has taken possession of and accounted for all the property belonging to Magner; that such supplemental report show in detail the amount of work done by the receiver and his attorney, and the necessity for paying out "such large amounts for clerk hire and the rate of wages paid by them". It is further prayed that he be required "to make a full and detailed account of his doings as such receiver".

It appears that there is not on file, nor in the office of the clerk, proof of "the service of any notice of the hearing on the final report of R. O. Woodward as receiver of W. A. Magner, and that the record does not show any such notice was ever given . . . to any creditor, or ever filed". The court ruled that it would "not set aside . . . the discharge and the final report for the sole reason that no notice has been given".

## 2.

Upon this ruling rests the first controversy here. The appellee contends that no statute requires such notice and that, therefore, the order at bar should not be set aside for want of such notice. The appellant says that, though no statute may, in terms, require the notice, that is the effect of the germane statute law, and that, whether or no statute commands notice, the order is, in the absence of notice, void for denying a day in court to parties interested, and thus making a judicial pronouncement by a proceeding which is not due process of law. The appellee asserts that we have settled, as have other courts, that no notice is needed because no statute requires one. We understand him to offer no

argument other than *stare decisis*. Of our own cases, the following are relied upon:

*Williams v. Trust Company*, 126 Iowa 22, so far from holding that, in the absence of statute, such notice is unnecessary, goes fully into the question of what is good notice, and says that such notice is one which the trial court has inherent power to require before discharging its official, and that, if it finds that the discharge was secured without compliance with its order, it has the undoubted right to set aside an order so obtained (126 Iowa 26) ; and, if the court exercises this power, a notice that has no signature and is addressed to no one and which is not entered of record until service is made, exhibits an entire lack of notice, and the court is without jurisdiction to enter an order of discharge based thereon. The case does not, however, rule on the effect of want of statute requirement, because it turns on obedience to an order that notice be given. The only thing decided is that, though notice be not required by statute, the court may yet order it; and if it does, rules of court requiring the notation of court orders on a calendar or motion docket require that the receiver note said order thereon, inclusive of the time of the hearing and nature of service, and then that the notice in the case was no notice.

*Kows v. Mowery*, 57 Iowa 20, is authority merely for the proposition that, in the absence of fraud or mistake, the final settlement and discharge of an administrator is a binding adjudication upon those interested, subject to a provision of statute that accounts settled in the absence of any person adversely interested, and without notice to him, may be opened within three months, on his application. To the same effect is *Patterson v. Bell,* 25 Iowa 149.

In *Arnold v. Spates*, 65 Iowa 570, the administrator did publish a notice; but, notwithstanding this, we applied the rule of *Kows'* case, to wit: that, under statute, the settlement could be opened arbitrarily within three months, and later than that for fraud or mistake; and that the statute time for

arbitrarily opening does not interfere with the functions of a court of equity.

It is apparent that none of these settle anything for the present controversy.

*O'Leary v. Brent,* (Ark.) 134 S. W. 617, does not moot the question of notice. Its holding is that, if the receiver be discharged, an appeal from a judgment in his favor will be dismissed, under the rule that, if the appellant's right to further prosecute has ceased, the appeal will be dismissed on motion of appellee. Incidentally, there is a statement, "It seems that the defense does not depend upon notice of the application for the discharge being served upon plaintiff"; and in support, among others, is cited *New York & W. U. Tel. Co. v. Jewett,* (N. Y.) 21 N. E., at 1037, left col. The *Jewett* case is a construction of *Herring v. New York, L. E. & W. R. Co.* (N. Y.) 12 N. E. 763. In it, there is no controversy over want of notice, and notice seems to have been given. The point involved seems to be that a receiver in an action has power to contest any claims against the estate of the corporation without consulting the creditors, and that judgments resulting are binding. The *Jewett* case construes the *Herring* case to be authority for the proposition that, where general creditors are all represented in the action between the receiver and debtors, they are not, as a matter of law or right, entitled to any personal notice of any proceedings in those actions. This language, applied to the facts involved in the *Herring* case, means that no notice is required that the receiver is having a lawsuit with a debtor.

The cases cited in *O'Leary's* case for its support are these:

*McGhee v. Willis,* (Ala.) 32 So. 301, which is a naked holding that the discharged receiver may plead the discharge in bar to a suit brought against him as such. Exactly this is the holding of *Archambeau v. Platt,* (Mass.) 53 N. E. 816.

And so of *Gray v. Grand Trunk Western R. Co.,* (Ill.) 156 Fed. 736, which merely holds that a receiver is not liable

personally, and, therefore, an action against him cannot be maintained after the receivership has been closed and the receiver discharged.

On the other hand, in *Ruggles v. Patton* (C. C. A.), (Mich.) 143 Fed. 312, at 314, Lurton, Judge, says:

"Nothing is better settled than that an allowance to a receiver by way of compensation for his services is not subject to the arbitrary determination of the court, but should be made upon a hearing at which the parties interested have an opportunity to contest the claim."

It is said in 34 Cyc., page 473: "An order allowing compensation to a receiver should be made only after notice and a hearing, at which the parties have an opportunity to contest the claim."

In *Merchants' Bank v. Crysler*, (C. C. A.) (Mo.) 67 Fed. 388, there was an oral motion made by the receiver's attorneys without notice to appellants and, upon this, the circuit court allowed the receiver and his attorney each $5,000 as additional compensation, and at the same time, approved certain long reports filed by the receiver. This was done on June 2, 1894. On June 11, appellants moved to have the court vacate this final allowance, alleging as ground that the allowance was irregularly made without notice; that the interveners were interested in the amount of said allowance; and that they desired to be heard in relation thereto. The motion was denied. The question on appeal does not seem to involve whether the allowance was reasonable in amount. No testimony was offered on that point. The Circuit Court of Appeals says:

"It is obvious that the motion with which we are concerned in the case at hand was not a motion granted of course, because it involved the production of evidence and a judicial inquiry into the nature and extent of the services that had been rendered by appellees and the value thereof. The only point that admits of any controversy is whether it was a special motion of the kind that can regularly be heard *ex parte*.

Mr. Daniels says it is impossible to lay down any clear rule and define such special motions as may properly be heard *ex parte;* but that any application addressed to a chancellor concerning proceedings to be taken in a pending case, that is not regulated by some general order or by any clearly defined rule of practice, must be made on notice. Daniels, Ch. Pl. and Prac., 1593. Also, in *Isnard v. Cazeaux,* 1 Paige 39, it was held that notice of every application for an order must be given to the opposite party, in case he has appeared, where the motion relates to any matter pending in court, or where a final order is sought, orders for time and those of a like nature alone excepted; otherwise, the applicant or petitioner will only be entitled to an order *nisi.* See also *Marshall v. Mellersh,* 5 Beav. 496, and *Hart v. Small,* 4 Paige 551.''

In *Ruggles v. Patton,* (C. C. A.) 143 Fed. 312, 315, a holding that, if the allowance is grossly excessive, the appellate court may correct the wrong, Mr. Justice Lurton says: ''If reviewable upon appeal, it follows that the order is erroneous if made without notice'', citing *Crysler's* case, *supra.*

In view of cases so sustaining appellant as to the effect of the precise omission to give notice which is involved on this hearing, we see no occasion to go into the line of authorities like *Pennoyer v. Neff,* 95 U. S. 714, many of which are cited by appellant—cases which announce the general rule that, in strictly adversative proceedings—the ordinary lawsuit,—notice and opportunity to be heard are essential to valid judgment.

In the matter at bar, any allowance that ought not to be made takes from creditors that much. It deprives them of a sum due them as much as would a judgment decreeing that they pay over that much. It seems they should be given opportunity to present why a claim diminishing the fund out of which payment was due them should be denied. The giving them notice can never do harm. As said in *Crysler's* case, *supra,* the omission to give it would often be injurious. In

that case, the court holds that there is no general order or clearly defined rule of practice regulating the question under consideration, and yet it is said:

"In the absence of any well settled rule of practice or general order governing the subject, we entertain no doubt that applications for such orders ought to be accompanied with notice to all parties in interest or to their solicitors of record, and that such application ought not to be heard *ex parte,* unless the parties, when notified of the application, fail to appear. . . . The allowance of such claims depletes the trust fund and frequently lessens the amount which the parties to the suit would otherwise be entitled to receive and would receive. The parties to the suit, therefore, have an interest in the amount of such allowances and . . . should be given an opportunity to defend. Any other practice might, and probably would, lead to great abuses."

The implication is that, if no notice be given, it is taking creditor's property without notice and without due process of law, and is therefore void.

Though no express statute requires such notice, we think it was error to hold that the order complained of could not be set aside, even though there was an absence of all notice.

II. If it be conceded, for the sake of present argument, that actual notice would save the order made, we are next to inquire into whether there was that. Mr. Estey, the attorney for the receiver, testified as a witness that, in his judgment, appellant "did not have any attorney in the Magner matter, prior to the time of filing the motion to set aside the final report of the receiver". Whatever there is, then, of actual notice, must arise from communications made to the party himself. The answer to the petition says that the petitioner was fully informed as to the proceedings taking place in all stages of the receivership, and "had due notice in writing, by mail, and otherwise, that said receivership would be closed and distribution made of the proceeds in the hands of your

2. RECEIVERS: final reports: notice of hearing: evidence.

receiver at the January, 1912, term of this court". The substantiation for this allegation is found, if anywhere, in the following correspondence: On January 6, 1912, the attorney for the receiver wrote appellant that the receiver expected to pay out the money in his hands to the creditors "either during this month or the first part of February". It will be noticed that the report was filed and approved on January 31, 1912. In so far as this letter is notice, it called upon the appellant to appear at a floating time anywhere from January 7, 1912, and during "the first part of February". The most formal notice in writing would, thus, stating time, scarcely be held sufficient in statement of time at which to appear. Nothing less than mounting guard in the court room on any day within this period would insure being present at the proceedings.

On January 23d, the receiver wrote appellant that he (the receiver) had closed out the stock "and expect to get an order of court to make distribution within a day or two, when I will close the matter up". Nothing is said about that a report will be filed, or what it will contain; and if appellant had appeared "within a day or two", it would have found no order on file and no application made. On January 25th, appellant answered this letter and continued to treat the affair as an open one, because it suggests, there are some book accounts due the estate, and it asks to be advised of their amount and whether they are collectable; and says that, while they understand from the letter of the receiver that he expects to pay a final dividend soon, they do not understand how this may be done, unless all the book accounts have been collected.

On February 2, 1912, after the report had been approved, the receiver wrote appellant, stating that he enclosed a receipt for their share of the funds in his hands as receiver, and that, if the enclosed receipt were signed and returned to a stated bank, that share would be paid. There was enclosed a statement of the total of the receipts, a lump total of the expendi-

tures, and the total of claims filed; and the receipt enclosed was one acknowledging full payment of the share of appellant. Nothing is said about the approval of any report filed, or that a report had been filed.

On February 9th, the attorney for the receiver wrote appellant that their said letter to the receiver had been shown to the attorney, and that, therefore, he enclosed a copy ''of the itemized statement of the expenses of the receivership, as shown by the receiver's report''. There is an explanation added, in effect that there are no book accounts, or, if any, that they are not worth collecting. This seems to be the first reference to a report, and it, too, says nothing about its being final or approved by the court.

In answer to the petition to set aside, the receiver states that different claims were filed aggregating $9,812.41, and that ''your receiver has paid out, under the order of court, the pro rata dividend coming to each of said claims, except the following claims''. There is then enumerated the claim of Forey, who instituted the receiver's proceedings, which is listed as $3,101.63, and the claim of appellant, in amount of $2,034.45. This answer is not verified, and the receiver, though called as a witness, did not speak to this point. Neither does it appear when such distribution as is here detailed was made, with reference to the approval of the final report. That is to say, it appears that payments were made under order of court, but not that they were made under the order of distribution involved in the final report and its approval. For aught that appears, these payments, other than these two large claims, may have been made before the final report was filed.

We are of opinion that, whatever the effect of actual notice might be in the premises, that which was done here is not the equivalent of notifying this appellant that it may be present at the hearing of the application made; that same will be made at a stated time and place, or at least not earlier than at the stated time, and as soon thereafter as the matter may

be reached in the due course of business. The correspondence does not mention a final report at any time prior to its filing, nor after its filing. The application for approval and discharge is at no time referred to.

2.

Be that as it may, better notice than this would accomplish no more than that the approval, discharge and order of distribution could not be collaterally assailed. We find no cases in which the presence of actual notice was held to stand in the way of an application to vacate the order made. The *Jewett* case, *supra*, relied upon by appellees in another connection, to wit, that no notice whatever is required, holds, in essence, that there was actual knowledge which enabled resisting the discharge, and that, in such circumstances, the remedy of the creditor whose rights have been injuriously affected by such discharge is by a motion to vacate the order of discharge. In *Joralmon v. McPhee*, (Colorado) 76 Pac. 922, a discharged receiver applied for compensation as such on January 7, 1901, and was on the same allowed as claimed. On January 23d, application was made to set aside the allowance and denied; and it is held that, though the attorney of the receiver did notify the interested parties on the morning of the day that the application would be made in the afternoon, the allowance should be set aside. It appeared that the receiver had been discharged and substituted for, while the court made the allowance under the misapprehension that he had been acting continuously up to the time of his discharge and, no testimony having been considered as to the value of the services, except the statement of the receiver himself, the court thought the allowance should be set aside and the parties in interest afforded an opportunity to be heard on the question of the amount of compensation to be allowed.

We are of opinion that, even if what here was done may

3. RECEIVERS: final report: approval: vacating order: effect of actual notice.

be treated as a species of actual notice, its existence was no justification for refusing to set aside the order, on the petition here. The attack is direct, and the court should have proceeded to ascertain whether the objections tendered with the application were well taken. Even if the appellant had been told that the application for a discharge would be made some time during the coming term, and if, in its absence at the hearing, and unrepresented, an erroneous allowance had been made the receiver himself for services, we think that, on a prima-facie showing that this is so, a direct application to set aside the approval should be entertained, to the end that this claim of error might be investigated, and, if error exists, that it might be corrected. This is certainly so when, as here, the application is met by nothing but an unverified answer speaking in most general terms, unless, indeed, the application be frivolous on its face.

3.

As an alternative proposition, we now reach whether the application to set aside was so frivolous as that we should not hold its rejection to be error, even though appellant had no opportunity to present objections at the first hearing and was refused a hearing on the application to set aside. The petitioner sets forth what he makes his basis for the relief asked. That sets the limit to what he may prove; and, if the application sets out nothing of substance, the refusal to entertain it would be harmless error.

4. RECEIVERS: final reports: order of approval: frivolous application to vacate.

It appears that the total of claims aggregates $9,812.41. The total collections fell short, roughly, something like $2,700.00. Out of the $7,100.00, roughly, that was collected, the final report claimed $2,300.00 for expenditures for collecting the $7,100.00. The two creditors who had not accepted their composition at the time the report was approved

represent more than half of the total claims, the appellant having close to a fourth of the total.   The claim for $400.00 on the part of the receiver goes into no detail, except to say that he has been in constant charge of the business and looked after it and the disposal of the stock of goods continuously from October 7, 1911, until January 12, 1912, and that $400.00 is reasonable compensation.   As to the item of $200.00 attorney's fees, all that is said is that it was paid as attorney's fees ''For consultation, advice, preparation of papers and securing orders.''   An item of $172.92 is that it was paid Sadie Wright ''For labor in store'', from October 21, 1911, to January 12, 1912.   In like case as to definiteness concerning labor done are two items, each for $123.75, paid respectively to Gertrude Stafford and Estella Barnes.   The report has a number of entries like ''By paid livery and expense'' and ''By paid Argo Gazette for advertising.''   ''By paid John A. Owens for labor in store, $111.00, from October 21, 1911, to January 12, 1912.''   And so of $82.50, paid Robert Magner. Another is, ''October 28th, by paid Mrs. Butler for labor in store, $27.00.''   The total of the expenditures, as said, is $2,301.95, out of a total collection of $7,092.34, and the creditors are called upon to pay this $2,300.00, and also to lose the $2,700.00 by which the collection falls short of the total of claims.

So far as the record shows, no vouchers or receipts of any kind are attached to the final report.   Nothing appears that makes it unreasonable for creditors to make inquiry into the propriety of allowing all that the final report claimed.   In the objections proposed, it is claimed that, since the report shows only lump payments in various ways, the creditors are thereby not enabled to determine whether anything that belongs to them is being taken from them wrongfully.   It is charged that the fees paid the receiver are excessive, and that the fees paid his attorney are; that the attorney for the receiver was also attorney for some of the creditors and collected a con-

siderable amount of fees as such out of said estate. It is charged that there were book accounts belonging to the estate amounting to several hundred dollars, at the time of the appointment of the receiver, of which book accounts he has rendered no account as to their collection or other disposition made thereof by him; charged, also, that rent was paid at an excessive rate, when a reduction might have been had and a part of the rental period cancelled by mutual consent.

The unverified answer to the application proceeds, mostly, along general lines. It denies that there were payments of excessive salaries to clerks, and asserts that only ordinary and necessary salaries, proper in carrying on the business, were paid. As to the specific charge that the attorney for the receiver got fees from others which should reduce the amount finally allowed him, the reply is that he got nothing but statutory fees for securing judgment on notes sued on by the receiver, and has not collected any attorney's fee from any creditor. It is further said, generally, that his fees are not in excess of the usual and ordinary fees for such services. No attention seems to have been paid to the fact that these statutory attorney's fees should be considered on how much more the attorney should have, nor to the fact that there was some ground for claiming that the final allowance made is too large, in view of other fees received by the attorney.

The answer concludes with a general statement that all the acts and doings of the receiver have been in accordance with the order and direction of the court, and, in so far as he was able, for the best interests of all persons interested.

The application is made by one whose claim is more than a fourth of all claims, and at a time when those whose claims were more than half of all claims refused to accept what the receiver tendered. Appellant's tendered objections were not frivolous; and while, as will presently appear, we are able to infer why hearing was refused, we shall attempt, later, to make clear why the reasons for the refusal are not valid.

4.

Appellant stated, in open court, that it had witnesses present and offered to prove that there were book accounts belonging to Magner not accounted for, and other witnesses in support of the various objections to the report, and stated further that, if the order is set aside, "We shall, in good faith, produce testimony in support of these various objections." Thereupon, the court said, after stating that it declined to set aside the final report on account of failure to serve notice, "And as to the other proffered testimony offered by Mr. Trewin, and as to what action, if any, shall be taken in the future, the court makes no suggestion, either as to time or method, but leaves that to counsel to take such action as they see fit." The court then repeated that it declined to set aside the discharge and final report, "for the sole reason that no notice has been given". It repeated that counsel is left free to take such action in the future as he sees fit. This being excepted to, counsel inquired if the court would hear testimony on the question of whether the receiver had performed his duties in the way of collecting the assets of the bankrupt and accounting for them to the creditors, to which the court responded that it would "listen to anything that is proffered in accordance with the usual rules of procedure and evidence, as the court understands them, and the pleadings in the case". Thereupon, counsel asked leave "to introduce testimony at this time to sustain the objections which Carson, Pirie, Scott & Company ask leave to file to the final report of the receiver". The receiver objected, and the court ruled that "As it understands the procedure, if Mr. Trewin is able to show that there was fraud or mistake in the report that he is not debarred from remedy, and that a proceeding in equity to modify or set aside, to correct, will, of course, be heard by the court"— to which an exception was taken.

5. RECEIVERS: final report: approval: vacation of order: failure to account: improvident fees: relief: independent action unnecessary.

As we understand this, it is a concession that fraud or mistake exhibited in this record may be corrected in some forum and by some method; and, indeed, no other construction is well possible. The cases cited by appellee indicate as much. There is *Cowins v. Tool,* 36 Iowa 82, that a mistake in prior settlements may be corrected at any time before final settlement and discharge, and that this may be done in probate court only; and *Tucker v. Stewart,* 121 Iowa 714, 715, which is that mistakes in final settlement may be corrected after settlement by equitable proceedings, on showing such grounds as will justify the interference of the court. These indicate, as does the record as a whole, that the court denied the application, or rather, the entertaining the proposed objections, on the theory that the relief must be had by some independent proceeding, and in a court of equity.

6. RECEIVERS: final reports: approval: vacation: failure to account for assets: allowing attorney fees without evidence.

Now, though a court of equity may open the settlement and administer upon omitted property (*Tucker's* case, 121 Iowa 716, 717), such power is concurrent, but not exclusive, in cases where a settled account omits property by mistake, or such property is in any way withheld from the accounting. As to omitted property, the receiver makes no question of forum, but asserts, rather, that he has omitted none. His position is, in effect, that, the order of appointment not having directed the receiver to take book accounts, he was justified in not doing anything as to such accounts; and that, in his opinion, there were no accounts worth attention; that, therefore, nothing was omitted from the final report, even if the creditor could show that the accounts did exist and were of value. It is this reasoning which the court seems to have sustained. There seems to us to be no answer to the complaint of this, unless it be necessary, in order to charge an omission to take and administer assets, to show that the order appointing the receiver in terms directed that such assets be taken and administered upon.

The appointment was made under Chapter 12, Title XVIII, of the Supplement to the Code, 1907. So far as germane, it is provided therein that the receiver may bring and defend actions, take and keep possession of property, and collect debts. If, then, there be property to take or debts to collect, and it be shown that such exist and have not been accounted for, there exists an omission which will justify the court in disregarding an order of settlement and final' approval. This applicant said he could prove just this. It does seem that such omissions required that he be given the opportunity to make such proof, which was denied him.

Again, no testimony was offered on the fees due the receiver. Upon such an allowance, the court should not act without evidence, although it may take into consideration its own personal knowledge. 34 Cyc. 473-474. And on objection to the allowance to the receiver and his expenses, the burden of showing reasonableness of the allowance is on him. *Commonwealth v. Monongahela Valley Bank*, (Pa.) 86 Atl. 719.

If there be a reason apparent in this record for the action taken, it is the claim that petitioner was entitled to no relief upon proving what they asserted; that the court to whom application was made would not interfere even though omissions were proven, or though improvident allowance to the receiver were shown to have been made without evidence; and that applicant must go hence to some other forum to obtain the relief sought.

III.   We think petitioner was always entitled to have the court that created the receivership act upon a claim of omission or improvident allowance to the receiver made without notice, even if equity had concurrent jurisdiction; that, at any rate, such court has such power in the present state of the law. The court applied to had, of course, plenary jurisdiction to deal effectively with this receivership. If, to effectuate this power, it became necessary to deal with some emergent issue or situation in a way that courts of equity deal, the general power carried the power thus to deal, even if the

court could not act upon the matter on original or independent application. On many things, the probate court, for illustration, has no original jurisdiction. To determine title to real property is an instance. But on issue whether an administrator should be appointed on the ground that the decedent has land which should be sold to pay debts, the probate court has power to try and determine whether an obstacle interposed to the title of the decedent should prevail against it. *Bollenbacher v. Whisnand*, (Ind.) 47 N. E. 706. As an incident to its power, it may decide whether instruments in writing, introduced to show that the title has passed to others than the estate, are invalid for any ground that make invalid a conveyance. *Williams v. Miles*, (Neb.) 89 N. W. 451-454; *Wheeler v. Wheeler*, 105 Ill. App. 48; *Genau v. Abbott*, (Neb.) 93 N. W. 942; *In re Jackman*, 26 Wis. 104, 109, 110; *Ketchum v. Walsworth*, 5 Wis. 95; *Glade v. White*, (Neb.) 60 N. W. 556; *Appeal of Schaeffner*, 41 Wis. 260; *In re Broderick*, 21 Wall. 503; 2 Redfield, Wills, page 12.

It may go so far in determining the rights of creditors in the funds of an insolvent debtor as to recognize and enforce a trust. *Wilson v. Coburn*, (Neb.) 53 N. W. 466.

It may open an admission to probate, to correct a mistake. *Brook v. Chappell*, 34 Wis. 405; *Williams'* case, (Neb.) 89 N. W. 452; *Campbell v. Logan*, 2 Bradf. Sur. 90.

It may order a new guardian's deed, though equitable considerations are involved, and though the order is made on finding that the original deed is defective and that a new one is needed to accomplish what was intended by the first. *Mock v. Chalstrom*, 121 Iowa 411, 416, 417.

It may construe an agreement to relinquish an inheritance. *Stolenburg v. Diercks*, 117 Iowa 25.

Though it may not decree foreclosure, it may, on issue voluntarily joined, determine the validity of mortgages. *Prouty v. Matheson*, 107 Iowa 259, 262, 263.

Where forms of action are abolished, the probate court gives any relief proven, even though this involves doing what

was formerly of equitable cognizance. *Williams'* case, (Neb.) 89 N. W. 452, 453, 454; *Mandeville v. Reynolds,* 68 N. Y. 528. 544-546; *Wilson v. Coburn,* 53 N. W. at 467.

We said in *Covert v. Sebern,* 73 Iowa 564, 569, 570, that, while a court of chancery has jurisdiction of cases brought for the sole purpose of construing and interpreting wills, it is not so far exclusive as to forbid other courts in which are cases involving rights under wills to interpret their language. Hence, in an action brought to require an executor to distribute according to the terms of a will, the probate court must, necessarily, and has power to, interpret the will to determine how distribution shall be made. Authority to interpret is possessed by all courts called upon to enforce rights under a will. Indeed, the probate court could not make an order affecting rights based on a will unless it may interpret the will to discover what these rights are.

### 2.

While proceedings in probate are to be distinguished from others, the court in which they are had is the same. *Tucker v. Stewart,* 121 Iowa at 715. Iowa no longer has either a law, equity or a probate court. All three are part of the district court. Therefore, plaintiff may, at least in opposition to matter proved, make proof in the same action of that which he formerly would be obliged to avail himself of by suit in equity. *Mandeville v. Reynolds,* 68 N. Y. 545. Wherefore, says the same case, the probate court may try the validity of a judgment, if that be an emergent issue. It says further:

"It was always theoretically unreasonable that, in one branch of the judiciary, the court should hold that the party prosecuted had no defense, and in another, that plaintiff had no right to recover. Now, when the action is prosecuted, we inquire whether, taking into consideration all the principles of law and equity bearing upon the case, the plaintiff ought to recover."

Where a writing is void for fraud, there should not be a second suit for relief against such writing, when it can be obtained by a defense in the first. *New York Cent. Ins. Co. v. National Pro. Ins. Co.*, 14 N. Y. 85; *Mandeville's* case, 68 N. Y. 546; *Savage v. Allen*, 54 N. Y. 458; *McHenry v. Hazard*, 45 N. Y. 580-587.

Assuming, for the sake of argument, that the relief sought by petitioner was equitable, we see no good reason why the district court, with power to deal with the receivership, with power to give equitable relief, refused to act and remitted petitioner to some other court and time. The judgment and order appealed from is reversed and the cause remanded, with direction to proceed to a hearing upon the petition and the objections filed and made.—*Reversed and Remanded.*

LADD, EVANS and GAYNOR, JJ., concur. DEEMER, C. J., concurs in Paragraphs II and III of the opinion.