James McHenry, Appellant, v. Rowland G. Hazard et al., Respondents.

A court of equity has power to compel the surrender and cancellation of written instruments, obtained by fraud, or held for inequitable and unconscientious purposes. The exercise of this jurisdiction is in the sound

discretion of the court, depending upon the special circumstances of each case; and it is not material, upon the question of jurisdiction, that the party seeking the relief has a defence at law to the instrument of which he prays the surrender and cancellation.

Where a defendant *may* obtain the equitable relief to which he is entitled, in an action brought *against* him, he can, nevertheless, during the pendency of such suit, bring an action in his own behalf to accomplish the same result.

An obligation was obtained from the plaintiff by fraudulent representations. A and B both claimed to own it by assignment. Each commenced an action against him, and claimed in hostility to each other.— *Held*, that he might, during the pendency of the actions against him, bring a separate suit against both claimants, to be relieved from the contract, on the ground of fraud therein, and was entitled to the decree of the court against them ordering its surrender and cancellation, upon establishing the fraud.

(Argued April 12th ; decided May 23d, 1871.)

APPEAL from the judgment of the General Term of the Supreme Court of the first judicial district, affirming a judgment of the Special Term sustaining a demurrer to the complaint.

Hallett wrote a letter to McHenry, both then being in England, upon which letter McHenry wrote an indorsement and returned the letter to Hallett. The letter and indorsement are as follows :

" *September 9th,* 1858.

" JAMES McHENRY, Esq. :

" DEAR SIR.—Now that the negotiation of the bonds of the Atlantic and Great Western R. R. is completed, and the contract for the rails concluded, and my right to receive my commissions recognized, you, as my attorney and trustee, are hereby authorized to pay John Thompson, Esq., of Rhode Island, £30,000 sterling, in the first mortgage seven per cent bonds of this company, at seventy-five per cent, at the date that you receive my commissions ; and payments made by. virtue of this order you will charge in account with me.

" I am, dear sir, faithfully yours,

" SAMUEL HALLETT."

"To Samuel Hallett, Esq.

"I engage to hold at the disposal of John Thompson £30,000, as herein mentioned by you, in same proportions as received by me, of which I shall render one-half in twelve months, and again in twenty-four months after date.

"*September* 15*th*, 1858.

"JAMES McHENRY."

McHenry being on a temporary visit to this country in the summer of 1864, three actions were commenced against him; all founded upon this instrument, and the liability supposed to have been created thereby; one by Rodman, and two by Hazard; each claiming to recover judgment in his own right, as assignees of Thompson. In the first suit of Rodman, an attachment was issued for $270,000 to discharge which the defendant gave a bond for $540,000. In the suit of Hazard, an attachment was issued and levied for $300,000. In the second suit of Rodman, no complaint had been served, the time for that purpose having been from time to time extended. Before the commencement of this action, an application was made at Special Term, under section 122 of the Code, for an order requiring the plaintiff, in each of the said actions, to make the defendant, in the other action, a party defendant, with proper allegations to bar and foreclose his right. This application was successfully opposed by the same attorneys now representing both defendants in the present case, on the ground that this plaintiff's remedy was to be found in an independent action against Hazard and Rodman for equitable relief, and not under that section of the Code. This action having been brought to obtain such relief, a demurrer was interposed to the complaint; the demurrer was sustained at Special and General Terms, and the plaintiff appeals here. The complaint in this action, as a part thereof, contains the complaints and answers thereto in the several actions of Rodman and Hazard, the defendants. It, substantially, alleges that the instrument or obligation was obtained by fraud and false pretenses, and should be

delivered up to be canceled. That the instrument was without consideration, and therefore void. The allegations of all the pleadings are stated sufficiently in detail in the opinion.

*W. W. McFarland*, for the appellants. A cross-suit must be brought, and the necessary parties brought in. (*Auburn City Bank* v *Leonard*, 20 How., 357.) On the question of fraud and failure of consideration. (Story's Eq., §§ 693, 694; *Hamilton College* v. *Cummings*, 1 John. Ch., 517; 17 N. Y., 599; *Lloyd* v. *Clark*, 6 Bev., 309; *French* v. *Connolly*, 2 Aust., 454; *Withingham* v. *Thornburg*, 2 Vern., 206; *De Costa* v. *Scandrel*, 2 P. Wms., 170.) On the question of joining the actions. (Story's Eq., §§ 852, 854, 901, and notes; *Howe* v. *Tenants of Broomsgrove*, 1 Vern., 22; *Mayor of N. Y.* v. *Pilkington*, 1 At., 282; *Carroll* v. *Stafford*, 3 How. U. S., 463; 17 N. Y., 592.)

*Joseph H. Choate*, for the respondents, cited *M. and H. R. R. R. Co.* v. *Clute* (4 Paige, 392); *Foot* v. *Sprague* (12 How., 355); *Hunt* v. *Farmer's Trust Co.* (8 How., 418); *Burgett* v. *Bissell* (5 How., 192); *Hinman* v. *Judson* (13 Barb., 629); *Oxford City Bank* v. *Leonard* (20 How., 193); *Dobson* v. *Pearce* (12 N. Y., 159); *Crary* v. *Goodman* (12 N. Y., 276); *Mirfield* v. *Bacon* (24 Barb., 154); *Bartlett* v. *Judd* (23 Barb., 262).

ANDREWS, J. The power of a court of equity to compel the surrender and cancellation of deeds and other written instruments, obtained by fraud or held for inequitable and unconscientious purposes, is undoubted. The jurisdiction is an ancient one, and is grounded upon the inherent power of the court to take cognizance of frauds, and to administer the peculiar remedies which belong to a court of equity in preventing and suppressing them.

While this jurisdiction has been more frequently invoked in respect to negotiable instruments and instruments purporting to give an interest in real estate, or creating a cloud upon

the title of the rightful owner, it has not been confined to cases of this description.

. It has been frequently exercised by compelling the surrender and cancellation of bonds, policies of insurance, and contracts not negotiable, obtained by fraud, or under which a hostile and unjust claim was or might be asserted. ( *Whittingham* v. *Thornburgh,* 2 Vern., 206 ; *De Costa* v. *Scandrel,* 2 P. Wms., 170 ; *Hamilton* v. *Cummings,* 1 Jo. Ch., 517.)

It has been exercised to compel the cancellation of forged instruments (*Peake* v. *Highfield,* 1 Russ., 559); of a false token, purporting to show an interest in the stock of a corporation (*The N. Y. and N. H. R. R. Co.* v. *Schuyler et al.,* 17 N. Y., 559), and in a great variety of cases, which it is now unnecessary to further enumerate.

The exercise of this jurisdiction is in the sound discretion of the court, depending upon the existence in each case of these special circumstances, which the course of practice and decision requires, to warrant the interposition of the court. (Story Eq. Jur., 693.)

In *Hamilton* v. *Cummings* (*supra*), the chancellor, in a carefully considered judgment, states as his conclusion from the authorities, that a resort to equity to compel the cancellation of written obligations, to be sustained, " must be expedient, either because the instrument is liable to abuse from its negotiable nature, or because the defence arising on its face may be difficult or uncertain at law, or from some other special circumstances peculiar to the case, and rendering a resort to a court of equity highly proper and clear of all suspicion of any design to promote expense and litigation."

Lord ELDON, in *Bromley* v. *Holland* (Coop, 9), speaking of this jurisdiction, says : " There is an ancient jurisdiction in this court to order bills, policies of insurance, and annuity deeds, to be delivered up, and it is a wholesome jurisdiction, to order void instruments to be delivered up, upon which vexatious demands might afterward be set up." (See also Story's Eq. Jur., § 700.)

Nor is it material upon the question of jurisdiction that the party seeking the relief has a defence at law to the instrument of which he prays the surrender and cancellation. (*Hamilton* v. *Cummings, supra;* Story's Eq. Jur., § 700*a*.)

The defendants admit by their demurrer that the plaintiff was induced to execute the writing of September 15th, 1858, whereby he engaged to hold and account for the bonds of the Atlantic and Great Western Railroad, to an amount and in the manner therein specified by the false and fraudulent representations of Hallett, which are specifically set out in the complaint.

This agreement, construed in connection with the letter of September 9th from Hallett to the plantiff, to which it refers, seems to import merely an engagement on the part of the plaintiff to execute an agency and authority at the instance of Hallett, in respect to bonds which might thereafter come to his possession belonging to the principal.

It does not appear from the letter or the acceptance indorsed thereon by the plaintiff, that the right of Hallett to the bonds was derived through any contract with the plaintiff, or that the latter was in any respect interested in them.

Upon this letter and acceptance alone, although the plaintiff was induced to sign the acceptance by the fraud of Hallett, there would be little ground for sustaining the action for the cancellation of the instrument.

The fraud of Hallett in procuring the plaintiff to sign the acceptance and agreement of September 15th, would seem to be no answer to a demand that he should account for any securities which he might receive as agent for the principal, according to the terms of his engagement.

It appears, however, by the complaints in the actions brought by these defendants against the plaintiff, that the acceptance of September 15th grew out of an agreement made between Hallett and the plaintiff a short time prior to that date, whereby the plaintiff agreed to divide with Hallett the profits he might realize from a contract made by the plaintiff with one Doolittle, a contractor for building the

Atlantic and Great Western railroad.. By that contract the plaintiff was to furnish to Doolittle a certain amount of money, and 31,000 tons of iron rail, for which Doolittle was to pay him £400,000 in the bonds and stocks of the corporation, at the times and in the proportions specified in the contract. These allegations in the complaints in the actions of these defendants against the plaintiff are adopted and affirmed by the plaintiff in his complaint in this action, and the plaintiff alleges that he was induced to enter into the agreement with Hallett to divide the profits arising from the contract with Doolittle, and to sign the acceptance of September 15th (which had reference to bonds to which Hallett, upon such division, would be entitled), upon the false and fraudulent representation of Hallett that he had and controlled certain contracts with third persons, by which they were to advance money and furnish rails in exchange for the bonds of the Atlantic and Great Western railroad, which contracts he represented would be available to the plaintiff upon his contract with Doolittle, and which he agreed to assign to the plaintiff. The complaint negatives the existence of the contracts, and the representations of Hallett in respect to them.

Upon these facts the plaintiff, within the principles governing courts of equity in decreeing the cancellation of contracts, was entitled to have the agreement of September 15th surrendered and cancelled. It purported to create an obligation which could be enforced against him.

It is true that the fraud of Hallett would have been a good defence to an action against the plaintiff, upon the agreement, but the fraud did not appear upon the face of the instrument, and could only be established by extrinsic proof.

The plaintiff, before an action had been commenced against him, could come into court for equitable relief against the fraud, and would not have been compelled to await the commencement of an action upon the contract, and to rely for his protection upon his ability to defend it. The defendants could not, at their election, postpone the litigation of the

question, and subject the plaintiff to the vexation of a litigation at a distant period, when the means of defence might be lost or impaired, and when he might be disabled from contesting the validity of the claim with the same ability as at the present time.

It is insisted, however, by the counsel for the defendants, that the pendency of the actions brought by them against the plaintiff, founded upon his liability, under the agreement of September 15th, was a bar to the relief sought by him through an independent action, and that his remedy against the fraudulent instrument was to be found in defending the actions brought against him.

It was a prominent motive, in constituting a single court having jurisdiction in law and equity, to remedy the inconvenience, which existed when legal and equitable remedies were administered by separate tribunals, of obliging parties to resort to two courts to determine rights connected with a single transaction. The provisions of the Code allowing causes of action, legal and equitable, growing out of the same transaction, to be united in a single suit, and legal and equitable defences to be interposed in the same answer, and authorizing affirmative relief to be granted to a defendant, were designed to prevent unnecessary litigation, and to enable parties to bring into one suit all the elements of the controversy for the purpose of a complete and final adjudication. And where a defendant may obtain the equitable relief to which he is entitled in the action brought against him, he cannot, during the pendency of such suit, bring an action in his own behalf to accomplish the same result.

It was said by Allen, J., in *Dobson* v. *Pierce* (2 Kern., 156), that " the intent of the legislature is very clear that all controversies respecting the subject-matter should be determined in one action."

But we are of opinion, that this case is not within the rules which we have stated, and that the plaintiff was not precluded by the pendency of the actions against him, from bringing a separate suit for equitable relief against the contract.

The actions brought by the defendants, severally, against the plaintiff, claimed of him the performance of the same alleged debt or duty based upon the contract of September 15th.

Each of the defendants claimed to own, by assignment, the instrument.

Each asserted the same right against the plaintiff, and claimed, in hostility to each other, the cause of action founded upon it, by title anterior to the commencement of either suit.

The right of the plaintiff to relief, and to the decree of the court for the surrender and cancellation of the contract upon which the actions were brought, was, upon the admitted facts, perfect.

But the judgment of the court, in his favor in one of the actions, would not determine the litigation.

That judgment would not conclude the other defendant from claiming to recover upon his title. He would not be bound as a privy, because his alleged title originated before the commencement of the action in which judgment had been rendered. (*Doe* v. *Earl of Derby*, 1 Adol. & Ellis, 783; 2 Smith's Ldg. Cases, 686.)

The plaintiff, therefore, unless he could bring his action for the cancellation of the contract against both parties claiming it, would not only be subjected to the expense of a double litigation and the hazard of a double recovery, but must try two actions to secure a single right.

The Code is not, we think, subject to a construction which would lead to such a result. (*Haire* v. *Baker*, 1 Seld., 357; *Siemon* v. *Schurck et al.*, 29 N. Y., 598.) The case was not one where a proceeding in the nature of an interpleader could have been taken in the original actions (Code, § 122), as the plaintiff denied any liability to either of the defendants.

The action was well brought, and the demurrer should have been overruled.

All the judges concurring, except Folger, J., not voting, judgment reversed.