Pee cueiam :
After hearing counsel on the motion to confirm the report of Eben Eveleth, esq., commissioner, bearing date April 4, 1874, and upon the exceptions filed thereto by some of the parties, and after duly considering the proofs and evidence taken in the several cases referred, respectively, the court is of the opinion that the account of the proceeds of the captured property should be restated, and the findings of facts be made to conform to the following instructions:
1. In the case of Lizzie Hamilton, administratrix, &c.:
The quantity of cotton captured, belonging to the claimant’s intestate, must be limited to the quantity averred in the original petition, viz, 150 bales. This quantity will be stated to have been transferred, as now stated in the report, and to have been mingled with other cotton, and its identity lost. The mass, consisting of 1,096 bales, having been shipped on the steamers Tigress, Forest Queen, and Henry Clay, and only a portion thereof having been recovered, the claimant’s cotton must be deemed *428 to have contributed to the loss. She will be entitled to recover for her proportion of the 150 bales (constructively saved from the three steamers) out of the general fund.
2. In the case of Oliver T. Morgan, for the Keene heirs, (No. 3556:)
The cotton must be deemed to have been in the possession of the parties in interest, viz, Narcissa Johnston and others, heirs, &c., upon the steamer Louisiana, prior to its seizure, and such possession, unchallenged, to be sufficient evidence of title. The facts will be stated accordingly, together with the intermingling of the cotton with other captures, the loss of its identity, and the loss to which the mass was subjected. The claimants will recover, for their proportional part of the quantity saved, out of the general fund.
3. In the case of Oliver T. Morgan, executor, (No. 3420 :)
The quantity of cotton reported seized upon the plantations of claimant’s testator must be limited to the two parcels averred in the petition, amounting to 398 bales. The court finds from the evidence that 393 bales were captured, that 38 bales and 95 ■ bales thereof are specifically traced and accounted for, as stated in the report, and that the remaining 260 bales formed a part of 2,400 bales turned over to the Government by Wagley & Go., contractors, or their assignees, Cutler & Go., one-half part of which, or the proceeds representing the same, was released to the contractors for their services. In addition to the recovery allowed by the special commissioner for the 38 bales and 95 bales, the claimant should recover the proceeds of the 260 bales, after deducting therefrom the one-half part allowed to the contractors. For the 38 bales and 95 bales specifically traced the report will stand,- and as to the remaining 130 bales, now allowed by the court, they will be a charge upon the general fund at the average rate.
4. In the case of Frederick W. Boyd, executor :
The court finds from the evidence in this case that there was taken by Wagley & Co., contractors, or their assignees, Cutler & Co., from the claimant’s plantations, 450 bales of unpicked cotton and 200 bales of baled cotton, making 650 in the aggregate. From this quantity should be deducted 44 bales specifically traced and already allowed in the report of the commissioner. The remaining 606 bales formed a part of the cotton received under the Wagley contracts, one-half of which was *429 released to the contractors for tbeir services. For 303 bales tbe claimant should recover, in addition to the quantity allowed in the report of the commissioner, which 303 bales will be a charge upon the general fund.
5. The commissioner will combine in one fund the proceeds of cotton shipped from Milliken’s Bend, Goodrich Landing, Lake Providence, and Villa Yista, pursuant to the recommendation in his report of April 4, 1874, and he will compute and state the amount which the claimants, whose cotton intermingled, are entitled to recover out of this general fund accordingly, including in the average the cases of Hamilton, Morgan, Morgan’s executor, and Boyd’s executor, now referred back.
And the court, upon the facts stated in the amended report of Commissioner Eveleth, bearing date the 14th May, 1874, decides thé following
conclusions oe law.
1. Where the captured property of different owners was intermingled and the identity lost, the respective owners can recover only out of the common fund derived from the mass; and where the mass was subjected to loss by accident, theft, or appropriation for military purposes, the owners must contribute to the loss in the same proportion that they contributed to the mass.
2. The owners of captured property appear to have formed two classes. The first class received the proceeds of their property by the direct release of the Secretary of the Treasury; the second are now seeking to recover their proceeds under the Abmdoned or captured property act. The action of the Secretary was illegal and contrary to the provisions of the statute, but his illegal action did not transmute the money which he released into a constructive fund for the benefit of the other class of owners. In the absence of positive proof to the contrary, the court must infer that the Secretary released the proceeds to the true owners, and did not exceed the proper amount. In these cases now before the court, it does not appear that the Secretary released the proceeds belonging to any of these claimants to a stranger, and hence it cannot be held that they should recover damages for his action. It is possible that *430 amounts released were in excess of tbe proceeds strictly belonging to such persons, but the damages thereby caused to the present claimants are too remote to be the subject of judicial determination upon the proofs.
3. As to the case of Helen C. Key, it was referred to the commissioner on the motion of the claimant. The order of reference expressly provided that the cases referred be heard upon the report of the commissioner and the exceptions thereto. The claimant had a reasonable time to make proof that the proceeds of her cotton reached the Treasury; and the court cannot now withh old from the fund an amoun t sufficient to meet any future recovery by her without doing injustice to other claimants, nor can it allow her to continue the prosecution of her case when the fund shall have been exhausted, without doing injustice to the defendants.
4. As to the case of Josiah Winchester, the facts do not establish a presumption that the captured cotton ever came to the possession of an agent of the Treasury, nor that any proceeds thereof are in the Treasury.
The following comprise the cases included in the report in which judgments were ordered to be entered in favor of the claimants, with the number of bales and the amount of the judgment in each case:
F. W. Boyd, executor, 347 bales. $37,350 92
B. B. Thomas, and T. W. MasoD, 134 bales. 25,184 50
Thomas Watts and wife, 27 bales. 3,076 54
Allen Jones, 43 bales. 4,899 68
Lizzie Hamilton, administratrix, 62 bales. 7,064 66
George Watt, 187 bales... *. 21,307 94
Oliver T. Morgan, tutor, 105 bales. 11,964 35
Simon Witkowski, 400 bales. 45,578 50
Oliver T. Morgan, executor, 168 bales. 21, 870 68
Catherine Carson, executrix, 6 bales. 843 00
Benj. C. Williams, 26 bales. 7,000 95
Louise Purdy, administratrix, 169 bales... 42, 513 48