Nott, J.,
concurring:
Cboses in action are commonly said to be unassignable at law, and of tbem that tbe assignee cannot maintain an action in assumpsit except in tbe name of tbe assignor. But this saying expresses neither tbe rule nor tbe principle, inasmuch as it omits two material limitations. Correctly stated, tbe rule of tbe common law would have been this: Upon considerations of pubhc policy, to prevent maintenance and the- multiplying of contentions and suits, no assignment or conveyance of a chose in action shall be effective to transfer tbe debt or demand, nor to give tbe assignee a right of action, unless tbe debtor assent to tbe transfer and promise to pay him, in which case tbe assignment will be effective and assumpsit will lie; but as regards tbe King, agaiust whom considerations of public policy should not prevail, be might always either grant or take a chose in action by assignment. Welch, v. Mandeville (5 Wheat., 277); Tiernan v. Jackson (5 Peters, 579); United States v. Buford, (3 id., 12).
A judicial theory of pubhc policy Gannot prevail against an express statutory declaration to tbe contrary. Hence it wotdd seem to follow, from tbe reason of tbe common-law rule touching tbe transfer of cboses in action, that where an officer of a court is authourized by statute, as in tbe case of assignees in bankruptcy, to sell and dispose of a chose in action, there cau be no pubhc policy which should forbid him to transfer tbe demand and with it tbe right of action to tbe assignee. Tbe common law, on considerations of pubhc policy, held that a person should not make such sales and that they wore void; but in this particular class of cases tbe statute law authorizes tbem to be made, and one would think thereby declares that they do not contravene pubhc policy.
Nevertheless, when tbe last bankrupt act was passed (Act 2d March, 1867, 14 Stat. L., p. 517, §§ 14] 15), courts bad so uniformly applied tbe common-law rule to assignments made by assignees in bankruptcy, alike under the former United States bankrupt act (Act 19th August, 1841, 5 Stat. L., p. 440, §.3) and under various State bankrupt acts and under tbe English bankrupt acts, that it must now be held that when tbe last legislation of Congress was framed it was with knowledge of and with reference to such decisions; and that when Congress omitted *242 to malee provision for suits by purchasers of cboses in action under bankrupt sales, suck as is made by the Massachusetts statute (Gen. Stat. Mass., ch. 118, § 100), from which the last United States act is copied, it was intended that no such right of action should accrue to the purchaser, and that he, as under the previous act, should be limited to a suit in the name of the assignor. And so it has been held of the present bankrupt act. (Leach v. Greene, 116 Mass., 534.)
I fully agree with the reasoning of the opinion of my brother, Mr. Justice Davis, on this subject; and if the question were an open one now, I should unhesitatingly adopt its conclusion. But unfortunately the question is not an open one, and it is safe to say that when the last bankrupt act was passed a decision did not exist in any State or country where the common law prevails which held that a purchaser of a chose in action from an assignee in bankruptcy could maintain an action in his own name unless the right to do so Avas expressly conferred by statute.
But a claim against the Government for the proceeds of captured property in the Treasury is not a chose in action. A chose in action, to which only the common-law rule applies, is a right to receive or recover a debt, or money, or damages for breach of contract, or for a tort connected Avith a contract which cannot be enforced without an action at law. (Com. Dig., Liens ; Chit. Eq. Dig.) A suit under the Abandoned or captured property Act does not rest upon or arise out of contract. No liability of the Government under the statute can be maintained on an implied contract arising from the taking of the property or the withholding of the proceeds. (Haycraft’s Case, S. C., 10 C. Cls. R., 95.) The proceeds in the Treasury, being held not for public use, but for the benefit of the loyal OAvner, do not come within the mandate of the Constitution, and for them no personal liability arises on the part of the Government. (Wylie's Case, 6 id., 295.) The thing sought to be recovered is not damages, but a specific fund, in which the Government has no title save that of trustee for the claimant. (Klein’s Case, S. C., 7 id., 240.) This trust fund, which is here the subject of assignment, is as specific a thing as the cotton from which it was derived, or as land which the Government may have rented, or as a horse Avhich it may have impressed into its service. A claim for it has none of the characteristics of a chose in action. It does not arise out *243 of contract; it does not constitute a debt of the defendant; the Government does not pay interest up'on it; no action upon implied contract can be maintained based upon the withholding of it; if it be lost, the owner’s right of action will die with it. In a word, it is simply a specific fund in equity, which the Government, as trustee, holds for whom it may concern; that is to say, for the rightful owner.
Specific thing's, real or personal, not in possession, could always be transferred at common law, except where the transfer was forbidden on grounds of champerty. ' "Thus, a mortgagee not in possession might transfer the legal title to a mortgage. (Com. Dig., Assignments, A.) Thus, a man might transfer the legal title to an undivided portion of a crop of grain growing on the land of another, and the purchaser might maintain an action for it in his own name. (Carter v. Jarvis, 9 Johns., 143; Austin v. Sawyer, 9 Cow., 39.)
The rule of the courts of the common law which forbade transfers of choses in action and allowed transfers of all other causes of action arising out of contract was purely arbitrary. It has never been extended to other subjects of assignment, and indeed had hardly been established ere it began to be evaded. In the course of time the courts- of the common law so far changed their minds as to hold that that could be done indirectly which could not be done directly; that the assignee of a chose in action, if he could not bring a suit in his own-name upon it, could nevertheless bring a suit to his own use in the name of his assignor. Next it was held that the assignor could not control or interfere with this suit in his name; that courts of law would take notice of these assignments, though void, as against public policy, and would protect the assignee. (Welch v. Mandeville, 1 Wheat., 233; 5 id., 277.) Then courts of equity took the matter up, holding that the assignee of a chose in action could not come into equity for relief, because he had a complete and adequate remedy at law, though in the name of his assignor. (Per Chancellor Walworth, and cases cited in Ontario Bank v. Mumford, 2 Barb., Ch. R., 596.) Thus by a steady adherence to the letter of the rule and a constant evasion of its intent, the rule itself, which was at first purely arbitrary, has become utterly artificial, and now amounts to nothing more than saying that the assignee of a chose in action may bring an action upon it, provided that he brings it in another man’s name instead of his own.
*244 But the decisions of the law courts did not express the whole of the English law in regard to the assignment of choses in action. From a very early day the court of chancery held that such transfers were not void, and that they passed a title which could be enforced in equity. American courts of equity have always gone to .chancery for their principles of jurisprudence, precisely as our law courts have gone to the courts of the common law for their rules of decision. If this were a court of the common law, and Parliament had submitted these captured-property cases to its jurisdiction, the strongest presumption would arise that these claims were regarded as choses in action, and that the court should be guided and limited by the rules of a court of law. But here three things should be clearly apprehended: 1st. Congress have not declared this court to be either a court of law or a court of equity, but have left its character and powers, as such, to be inferred from the subjects of jurisdiction confided to it and the remedies placed at its disposal. And so the Supreme Court in effect held in Alire’s Case (7 C. Cls. R., 28). 2d. The primary or general jurisdiction of the court is founded upon “ contract, express or implied,” and such claims are of the nature of choses in action, and such actions are of the nature of personal actions at law. 3d. The abandoned or captured property cases are not founded upon contract; no such suit can be maintained on an implied contract, arising from the taking of the property or the withholding of the proceeds; the Government is only liable for the trust fund in its possession, and whenever the fund vanishes the liability ends. (Haycraft’s Case, S. C., 10 C. Cls. R., 95; Wylie’s Case, 6 id., 295; Bynum’s Case, 8 id., 440; Thomas’s Motion, 12 id., 273.) Here, then, is a court with no defined character as to law or equity, having jurisdiction of two distinct classes of cases; the one in their nature actions at law, the other in their nature suits in equity. It is conceded that, as to the former, the court should not seek rules and analogies in courts of equity. Is it to be maintained that, as to the latter, the 'court must seek them only in courts of law, which never had jurisdiction of trusts, and, therefore, never settled rules or principles applicable to this subject of jurisdiction ?
So far as the ordinary jurisdiction of the court is concerned, it is not a court of equity and can decree no equitable relief. (Alire’s Case, S. C., 7 C. Cls. R., 28.) But these captured property funds have been declared repeatedly by the Supreme Court *245 to form a trust. (Anderson’s Case, 7 C. Cls. R., 121; Klein’s, ib., 128; Raymond’s, 11 id., 477.) A liability arising out. of tbe relations of an accepted trust is exclusively- a matter of equity jurisdiction, wbicb cannot be enforced at law. (Bonner’s Case, S. C., 7 id., 133.) A trustee is only suable in equity in regard to any matter touching tbe trust. (Story Eq. Jur., § 975 a; Curtis v. Smith, 6 Blatcb. C. C. R., 537.) And as courts of equity will compel tbe performance of a trust (so says Story) “ they will assist tbe trustees, and protect tbeni in due performance of tbe trust whenever they seek tbe aid and direction of tbe court as to tbe establishment, tbe management, or tbe execution of it.” (§ 961.)
Nevertheless, if this court can proceed in these cases upon tbe principle of equity jurisdiction, it must be because tbe rules of law are here incommensurate for tbe proper administration of tbe trust, and tbe court must be regarded as a court of equity strictly pro hae vice. What, then, has been tbe practical construction given to tbe powers of this court over this fund in the Treasury, and bow have tbe courts treated such claims; whether as a chose in action or a specific fund in equity ?
Tbe nature of a subject or jurisdiction must sooner or later in a greater or less degree guide and control tbe action of a court. Accordingly, at a very early day (Turner’s Case, 2 C. Cls. R., 390), this court found itself compelled to assume tbe functions of a court of equity in these abandoned or captured property cases — in allowing motions analogous to “ bills in tbe nature of a bill of interpleader ” (Story Eq. Jur., § 824; McHenry v. Hazard, 45 N. Y. 580; 4 Paige 483; Hopkins’s Cb. 274); in compelling adverse claimants to interplead; in consolidating distinct suits; in bringing together in one suit all conflicting claims upon a particular fund, and,' generally, in treating tbe proceeds in tbe Treasury as a fund in equity. In at least one of those cases, where, there being many adverse parties, distinct suits bad been consolidated and only one judgment finally rendered determining tbe rights of several adverse claimants both as between each other and tbe defendants, tbe Supreme Court acted upon it without questioning tbe equitable power assumed by this comt (The Elgee Cotton Cases, 10 C. Cls. R., 181), and in another instance expressly approved of and upheld tbe course wbicb this coiu't bad pursued. (Sundry Cotton Cases, 11 id., 477.) In several instances we have held that where tbe *246 Government, under tbe direction of tlie court, has paid away a fund or a portion of a fund to one person, it cannot be compelled to pay over again to another; i. e., that its liabilities are strictly those of a trustee in equity, and not those of a contractor at law. (See the deductions made for prior judgments in Boyd’s Case, 9 C. Cls. R., 419; Sundry Cotton Cases, 10 id., 502; 11 id., 484, 489; Ross’s Case, 12 id., 566.) In Sevier’s Case (7 id., 387), the court held that a prior judgment which awarded too large a proportion of a fund to another party should not preclude the claimant from recovering the full amount of his proceeds, because the Secretary of the Treasury had made an erroneous report of the condition of the fund, and the law officers of the Government had not made the later claimant a party to the former suit; a questionable conclusion, in view of the general principle that the Government is not liable for the negligences of its officers, but which must be sustained, if it can be sustained at all, on the ground that the Government in this class of cases must be held to the ordinary responsibilities of a trustee. In Turner’s Case (2 id., 390), which is the first where the character of these suits is spoken of, the court said that the proceedings are “in the nature of an action in rem; and Mrs. Thomas’s. Motion (12 id., 273), which is the last, that “ an action under this statute is a suit in equity partaking largely of the nature of a proceeding in rem.” In every cotton case that has ever been before the court the returns of the Treasury have been treated as the reports of a trustee iu regard to a fund in equity, and the parties have been allowed to resort to other returns than those made in the case having a hearing, and decrees have repeatedly been rendered on returns in other cases which neither party produced or read in evidence. In Price’s Case (7 id.), the court segregated the money in the Treasury into distinct fuuds and charged the funds with losses and recoveries in other suits, and withheld moneys for suits not yet tried, and exercised a knowledge outside of the record of the case, such as is said to exist only in the conscience of the chancellor, and announced that its decision should stand as an accounting for all subsequent cases (Austell’s Case, 7 id., 599; Cartwright’s, 8 id., 465; Bealls, 9 id., 299; H. J. Price’s, ib., 328; Ross’s, 12 id., 565), and carried its action to the utmost verge of the authority of a court of equity. As early as Woodruff’s Case (5 C. Cls. R., 645) a majority announced that such a suit “ is a suit in equity, relating to a fund in equity, and *247 brought to enforce a trust”; a theory upon which the coiut has steadfastly acted ever since, and which has never been ques-toned from that day to this. Indeed,'it is safe to say that there has never been a case where the due administration of the fund required the interposition of a court of equity that this court has not assumed equity powers in treating the Government as a trustee and the fond as a trust fund in equity. It would overturn in reason and consistency no inconsiderable proportion of our decisions, and likewise those of the Supreme Court, were it to be held now that, in the administration of this fund, this court must proceed strictly as a court of law.
In this connection it should also benoted that the statute reconstituting this court (Amended Court of Claims Act 3d March, 1863, 12 Stat. L., p. 765) and the, Abandoned or captured property Act (ib., page 820) were framed in Congress at the same time, and were enacted, though not approved, on the same day.
The former act, which provides for the proceedings of the court,'in addition to the term “judgment,” uses the term “ decree” (§ 6), and with such significance, when compared with other parts of the act where it is not used, as to import that it was used for a. purpose. It is true, as the Supreme Court held in Alire’s Case (7 C. Cls. R., 28) that these decrees must be decrees for the payment of money; but it seems plain that when Congress were submitting to our jurisdiction a class of cases not arising from contract, express or implied, and equitable in their nature, they should have referred to the final determination of such cases by its designation in equity, and have provided that they, as well as judgments at law, should be the subject of appeal. ' •
There are, indeed, cases at the common law where the term “trust” is used, as where money is paid to one man for the use of another, and he is said to receive it in trust; as where a factor sells the goods of the principal and holds the money in trust for the general owner; and it may be said that these implied trusts in law are what the Supreme Court intended, when in numerous instances it ascribed the character of- a trust to the captured property fund, and the character of a trustee to the Government as its custodian. But there are two reasons, I think, why that interpretation is insufficient to satisfy the use of these terms.
*248 In tbe first place, sucb implied trusts at law always arise out of contract, express or implied, and an action upon contract can be maintained for tbe withholding of the money; while here the liability of the G-oyernment did not arise out of contract (Wylie’s Case, 6 C. Cls. R., 295), and no action upon an implied contract can be maintained for the withholding' of the money. (Haycraft’s Case, S. C., 10 id., 96.) In the second place, the liability of the defendant in those cases is generally personal, while here the liability of the G-oyernment is strictly that of a trustee in equity. In a word, both in the inception of this trust and in the administration of it, and in the rights and remedies attached to it, and in the adjudged liabilities under it, I perceive no element of contract, express or implied, nor any responsibility saye such as properly belongs to a trust in equity; and it is now indisputable that if this court had from the first treated such claims as choses in action, and had exercised only the ordinary powers and remedies of a court of law, the Government would have had to pay for the same captured property to a dozen different parties, and many of the funds would have been exhausted before the rightful owner could have had a hearing.
I am therefore of the opinion that a claim for the proceeds of captured property is not a chose in action, and that it is a specific thing, viz, a fund in equity, as to which the rule of courts of the common law never applied, and which have always been held to be the subject of sale and transfer. That the sale of such a claim against the Government is not void under the Act 26th February, 1853 (10 Stat. L., 17) when made by an assignee in bankruptcy, under the Act 2d March, 1867 (14 Stat. L., p. 517, §§ 14, 15), I agree with the opinion of the court, and in the conclusion that the purchaser should be admitted to prosecute in his own name.
It being brought to the court’s attention that this suit was commenced by Messrs. Wakeman and Batting, as attorneys for Browning, and with the knowledge and assent of Tait, and that the whole proceedings had been conducted by Wakeman and Batting up to and including the final hearing, in which they took part,
The Court thereupon ordered that Mr. Phillips’s motion to appear as attorney of record for Burke be granted on his making *249 satisfactory provision for the payment of the fees of Messrs. Wakeman and Latting.
At a hearing at chambers it appeared that Browning; with Taifs assent, had agreed that Wakeman and Latting should receive 30 per cent, of whatever might be recovered as compensation in hill on this and other evidence,
The Court held that 20 per cent, of the amount of the final judgment in the suit was a reasonable compensation to the attorneys of Browning and Tait.
Mr. Phillips, on showing that the order of the court had been complied with, appeared as the attorney of record of Burke, and on his motion entry was made of judgment for plaintiff for $8,050.