ÆTNA EXPLOSIVES COMPANY, INC., Respondent, v. EDGAR W. BASSICK and Others, Appellants, Impleaded with DE LANCY T. SMITH and LOUIS B. EPPSTEIN, Defendants.

First Department, March 9, 1917.

Equity — suit to set aside alleged improvident contract made by president of corporation — when remedy at law is adequate — injunction denied — powers of president of business corporation — rights of third person dealing with corporation — when equity will not restrain prosecution of action at law — contract not authorized by formal resolution — multiplicity of actions — State courts will not restrain prosecution of legal action in Federal court which is properly brought — when complication of facts not basis for equity jurisdiction.

Suit in equity. The plaintiff, a corporation, engaged in the manufacture of ammunition, in substance alleges that its president, prior to making a contract with a foreign government for the manufacture of munitions, entered into a contract by which he bound the corporation to pay to one B. certain commissions for procuring the foreign contract, whereby said B. made large and unconscionable profits which were out of all proportion to the services rendered by him and were excessive and extravagant so as to constitute a gift of funds and property of the corporation without any substantial consideration therefor. It was further alleged that the president acted without authority from the plaintiff, negligently and in abuse of his authority, and had paid large sums of money to said B. and had given to him notes of the plaintiff corporation, certain of which

were indorsed by B. to persons claiming to be holders in due course and who have sued the plaintiff upon some of said notes, which suits are pending and undetermined. The relief demanded is that the agreement for commissions and the notes given in pursuance thereof be declared void and be canceled; that the fair value of B.'s services be ascertained and that he be directed to account for moneys received in excess thereof and that other defendants be enjoined from prosecuting actions on said notes and from negotiating or assigning them.

*Held,* that the plaintiff has a complete and adequate remedy at law and that a temporary injunction issued in the suit should be set aside.

Where a president of a business corporation has general management thereof and control of its property, the corporation is *prima facie* bound by contracts made by him in its name, if they are within the apparent power of the corporation to make, and third parties entering into such contracts are not bound by secret limitations of the president's authority contained in the by-laws.

As between a corporation and third parties there is no obligation on the part of the latter to inquire whether an act is advantageous or disadvantageous to the corporation, nor do the obligations existing between a trustee and a *cestui que trust* obtain. And in the absence of fraud the sole duty of one dealing with an officer of such corporation is to ascertain whether the agreement is one which the officer has an express or implied power to make. Equity will not restrain the prosecution of an action at law merely on the hope of counsel that he may be able at the trial of the suit in equity to develop testimony which may tend to prove fraud.

*Held, further,* that the complaint aforesaid did not show *prima facie* that the contract was not in fact authorized by the corporation, as a formal resolution of the directors was not essential.

As the actions on the promissory notes brought against the plaintiff are instituted by different persons on separate and distinct obligations involving different issues, the suit cannot be sustained as a bill of peace.

Moreover, the issues involved in said various actions cannot be tried in this suit, especially where some of them are pending in the Federal courts which have jurisdiction, in that the actions exist between citizens of different States who thus have a right to select their forum.

Equity will not enjoin the transfer of the notes of the corporation, so that they cannot reach the hands of innocent holders, where it is not shown that they have not matured.

The suit cannot be laid in equity merely because it is possible that the agent of the plaintiff may be found to be entitled to recover for his services upon a *quantum meruit* and that an apportionment of such sum could be made among the defendants.

Nor can the right to equitable relief be based upon the contention that the facts are complicated and that proof thereof in some of the actions will be difficult, for mere complication of facts alone and difficulty of proof are not a basis for equity jurisdiction.

CLARKE, P. J., and SCOTT, J., dissented, with opinion.

APPEAL by the defendants, Edgar W. Bassick and others, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 29th day of January, 1917, granting an injunction *pendente lite*.

*James A. O'Gorman,* for the appellants.

*George L. Ingraham,* for the respondent.

PAGE, J.:

The complaint in this action, after alleging the status of the parties and that Arthur J. Moxham was president of the plaintiff up to March, 1916, states that between the dates of March 1 and December 17, 1915, the plaintiff corporation entered into certain large contracts with the French government and with the Canadian Car and Foundry Company for the manufacture and sale of munitions and supplies for manufacturing munitions, aggregating more than $30,000,000 in price. It then alleges that prior to the making of these contracts by the plaintiff the defendant Bassick formed the design of securing for himself and others large and unconscionable profits and sums of money in connection with the sale of these supplies by the plaintiff. The complaint then alleges that at the time the aforesaid contracts of plaintiff for sale of munitions and supplies were entered into, Moxham, plaintiff's president, assuming to act for and on behalf of the plaintiff, agreed to pay to Bassick certain sums of money for services alleged to have been rendered by Bassick in obtaining the munitions contracts. There follows a description of the manner in which it was agreed that plaintiff would pay to Bassick out of payments made to plaintiff for the said munitions, commissions in excess of $3,000,000 which it is alleged are out of all proportion " to any services which may have been rendered by said defendant Bassick " and " are altogether excessive and extravagant and constitute a gift of funds and property of the corporation without real or substantial consideration therefor." It is then alleged that Moxham in making the agreements with Bassick " acted without authority from the plaintiff, and acted negligently and in abuse of his authority and in disregard of his

duty properly to safeguard the interests of the plaintiff," and that Bassick knew that Moxham so acted and "knowingly undertook to take advantage of said Moxham's abuse of authority and of his negligence and failure to act in accordance with his duty to the plaintiff." There follows a totally irrelevant statement concerning the capital stock of the plaintiff and trading therein by persons not connected with this action. The complaint then alleges that Moxham and Belin, as president and treasurer, respectively, of the plaintiff, have paid to Bassick in pursuance of the said agreements made with him, large sums of money from the plaintiff's funds and have given to him promissory notes purporting to be notes of the plaintiff, and which were given " as the defendant Bassick and the other defendants well knew, without authority from the plaintiff and in violation of the duty owed the plaintiff by said Moxham and Belin."

It is then alleged that $644,960.76 has been so paid to Bassick in cash and $170,000 by transfer of stock of the plaintiff company to his nominees defendants John and Eppstein, and $595,592.67 by the payment of notes, and in addition thereto notes aggregating $753,234.40 have been given to said Bassick without authority and remain unpaid, which Bassick claims are valid obligations.

The plaintiff then states that on March 21, 1916, new directors of the plaintiff were elected who discovered the aforesaid agreements and payments to Bassick and that " no services having any real or substantial value were rendered by said defendant Bassick." It is then alleged that the defendants claim an interest in Bassick's contracts and that Bassick has indorsed certain of the aforesaid notes to defendants, who claim to be holders in due course, as a result of which defendant Lenpier Trading Company, Inc., has sued plaintiff in the Supreme Court, New York county, upon five of said notes aggregating $135,973.71, and defendant Smith has sued plaintiff in the Supreme Court, New York county, upon six of said notes aggregating $101,931.91, and Bassick has brought suit upon eighteen of said notes, aggregating $321,583.78, in the United States District Court, and the defendant John has brought an action upon five of said notes in the United States District

Court, all of which suits are now pending and undetermined. The complaint then states that it cannot be satisfactorily determined under all the facts and circumstances whether "any sum of money was originally due the defendant Bassick for any services which may have been rendered by him in connection with the contracts referred to in paragraph V hereof, and, if so, how much was due him, nor can it be determined whether any sums of money are now due and payable or will become due and payable on account of said agreements or said notes or any of them."

The relief demanded is that the agreement entered into between Moxham and Bassick and the notes assumed to be given in pursuance thereof be declared void and be canceled; that the fair value of Bassick's services be ascertained and he be directed to account for all payments of money and property in excess thereof; that the defendants be enjoined from prosecuting their actions and from bringing further actions upon the notes or agreements and from negotiating or assigning them.

The affidavits read in support of the motion for an injunction *pendente lite*, in so far as they are relevant, confine themselves principally to an attempt to show that though plaintiff's former president Moxham employed Bassick and his associates to negotiate contracts with the agent for the French government, he or other regular employees of the plaintiff could probably have obtained the contracts directly without the interposition of a broker or agent, and could thus have saved commissions. There are other affidavits which tend to show that the price paid to the plaintiff by the French government was not in excess of the market price and that the commissions paid and agreed to be paid to Bassick were larger than the usual commissions upon such transactions. As to the authority of Moxham to enter into the contracts with Bassick, it is shown by plaintiff's own papers that he was president of the plaintiff, and as such, by section 2, article IV of the plaintiff's by-laws it is provided that he shall "preside at the meetings of the stockholders and the board of directors. He shall be the chief executive officer and head of the corporation and subject to the direction of the board of directors and the executive committee

and shall have the general management and control of its property, business and affairs, and may sign and execute all authorized bonds, contracts and other obligations in the name of the corporation, and shall perform such other duties as may be assigned to him by the board of directors."

It is well settled in this State that where a president of a trading or business corporation is given general management and control of its property, business and affairs, the corporation is *prima facie* bound by contracts entered into by him in the name of the corporation, if the contracts are within the apparent power of the corporation to make, and third parties entering into such contracts are not bound by secret limitations of his authority contained in the by-laws. (*Oakes* v. *C. W. Co.*, 143 N. Y. 430; *Powers* v. *Schlicht H. & P. Co.*, 23 App. Div. 380; affd. on opinion below, 165 N. Y. 662.)

While it is true that as between the directors or officers and the corporation or the stockholders, a fiduciary relationship exists, and at the suit of either the corporation or in a derivative action by stockholders the directors are accountable in equity as trustees, as between the corporation and third persons the officers are agents, and so long as they act within the actual or implied scope of their employment, or their acts are subsequently ratified, the corporation is liable. As between the corporation and third parties there is no obligation to inquire whether the act is advantageous or disadvantageous to the corporation. Nor are the obligations which are imposed upon one dealing with a trustee in relation to the property of a *cestui que trust* applicable to a person dealing with the officers of a corporation. The sole duty is that which rests upon one dealing with an agent of a principal, which is to ascertain that the agreement is one that the agent has either express or implied power to make. If the agreement is improvident or negligently made the loss must fall upon the principal. If it had been alleged that there was fraud in which the defendants participated a different situation would arise.

Equity will not restrain a prosecution of an action at law merely on the hope expressed by an attorney, that he may be able in the course of a trial of an equity action to develop testimony that might tend to prove fraud.

It appears from the exhibits annexed to plaintiff's motion papers that at a meeting of the directors of the plaintiff, held on February 25, 1915, the president submitted to the board of directors a statement of the negotiation pending in the matter of the selling of the powder and the chemicals used in the manufacture of explosives that were the subject of the contracts subsequently made, as per a memorandum attached to the minutes which was a letter of that date addressed to Bassick and stated explicitly the commission that was to be paid to him. This memorandum was signed by the " ÆTNA Explosives Co., Inc., A. J. Moxham, President." The minutes state, "after discussion the general policy of closing these negotiations, if possible to do so on a satisfactory basis, was acquiesced in without motion."

In my opinion the plaintiff has not shown even *prima facie* that the contract was not in fact authorized by the corporation. It is well settled that a formal resolution of the directors of a corporation is not essential to their authorization of an act by an agent. (*Young* v. *U. S. Mortgage & Trust Co.*, 214 N. Y. 279, 285.) All that plaintiff has shown is that there was no formal resolution authorizing its president to make the contracts.

It is not alleged that Bassick entered into a conspiracy to defraud the plaintiff or that the contracts were induced by false or fraudulent representation. There is no allegation of a mutual mistake nor is there any ground set forth that would justify a court of equity in granting a rescission of the contract, which was the asserted ground for relief in *Deiches* v. *Western Development Co., No. 2* (157 App. Div. 676).

Nor can this suit be sustained as a bill of peace. The actions sought to be restrained are by different plaintiffs on separate and distinct obligations of this plaintiff, each involving different issues; as to all except Bassick the issue of a *bona fide* holder is presented, which the party plaintiff therein is entitled to have tried separately by a jury.

Furthermore, all the issues involved in the various actions cannot be tried in this suit.

The issues present in the two actions pending in the United States District Court cannot be litigated in this suit. Where

a Federal and a State court have concurrent jurisdiction "the tribunal where jurisdiction first attaches holds it, to the exclusion of the other, until its duty is fully performed and the jurisdiction involved is exhausted; and this rule applies alike in both civil and criminal cases." (*Harkrader* v. *Wadley,* 172 U. S. 148, 164; *Ex parte Young,* 209 id. 123.) The plaintiffs in those actions being citizens of other States have a right to select their forum. Having made their selection and the Federal court having acquired jurisdiction, the courts of this State cannot compel them to litigate the issues therein involved in our tribunal, either directly by enjoining the prosecution of the actions in the Federal court, or indirectly by restraining an amendment of pleadings, or by assuming jurisdiction of those actions and trying the issues involved therein, as is attempted by the order under review. "It may not be doubted that the judicial power of the United States as created by the Constitution and provided for by Congress pursuant to its constitutional authority, is a power wholly independent of State action and which therefore the several States may not by any exertion of authority in any form, directly or indirectly, destroy, abridge, limit or render inefficacious. The doctrine is so elementary as to require no citation of authority to sustain it. Indeed, it stands out so plainly as one of the essential and fundamental conceptions upon which our constitutional system rests, and the lines which define it are so broad and so obvious that, unlike some of the other powers delegated by the Constitution, where the lines of distinction are less clearly defined, the attempts to transgress or forget them have been so infrequent as to call for few occasions for their statement and application." (*Harrison* v. *St. L. & San Francisco R. R.,* 232 U. S. 318, 328.) Furthermore, it does not appear that any of the negotiable instruments outstanding have not matured, the negotiation of which equity will enjoin to prevent their coming into the hands of innocent holders. Another ground upon which it is sought to sustain equitable relief is that it may be found that Bassick is entitled to recover something for his services, upon a *quantum meruit,* and in that event it is claimed that an apportionment of such sum could be made among all the defendants. If the contract and notes are void none of the defendants, except pos-

sibly Bassick, could have a claim upon a *quantum meruit* against the plaintiff. What the rights of the respective defendants may be against Bassick has not been asserted in any of the actions, and in no way concerns this plaintiff. Plaintiff need not be solicitous of a claim by Bassick to recover on a *quantum meruit* until he asserts it. There are, therefore, no grounds for equitable relief presented.

The plaintiff has a complete and adequate remedy at law. Assuming that the contract with Bassick was *ultra vires* and unauthorized and that the notes given thereunder were without consideration and void and that the defendants all had notice thereof, which is the assumption upon which plaintiff bases its right to an injunction, any and all of these matters could be asserted as defenses in actions at law upon the notes or upon the contract. " Equity will not  *  *  * restrain an action at law unless special reasons demonstrate that full justice cannot be done in the latter action  *  *  *. If the equitable action holds out no promise of relief which may not be secured in the other and more restricted proceeding, there is no occasion for interference and it will be withheld." (*Burke* v. *Burke*, 212 N. Y. 303, 307.) It may be as the plaintiff asserts that the facts are complicated, and proof thereof in some of the actions will be difficult. But "mere complication of facts alone and difficulty of proof are not a basis of equity jurisdiction." (*Curriden* v. *Middleton*, 232 U. S. 633, 636.)

For the reasons above set forth the order should be reversed, with ten dollars costs and disbursements, and the motion denied and the temporary injunction vacated, with ten dollars costs.

DAVIS and SHEARN, JJ., concurred; CLARKE, P. J., and SCOTT, J., dissented.

SCOTT, J. (dissenting):

I am unable to concur in the reversal of the order appealed from. The purpose of the present action is to restrain the prosecution of certain actions at law against the present plaintiff, until the equitable defenses which plaintiff asserts against the claims embraced or to be embraced in the legal actions can be passed upon by a court of equity which alone has power to grant relief. That the court acting as a court of equity

has power to grant an injunction under such circumstances, and in a proper case, is well settled and cannot be questioned, proper security having been given as has been done here. It has been urged that the plaintiff can present its equitable defenses in the action at law, as well as it can present them in a separate action in equity, but that is manifestly inaccurate as a practical matter. The difficulties in the way of presenting such defenses in an action at law have been very recently pointed out by this court in *Deiches* v. *Western Development Co., No. 2* (157 App. Div. 676), a case much resembling those it is now sought to restrain. In that case we expressly pointed out that the defendant's appropriate course was to apply to equity in a separate suit precisely as the plaintiff has done here. I can see no reason why we should now condemn a practice which we so recently commended. It clearly appears from the moving papers that plaintiff has already been sued in more than one action upon promissory notes, and that unless this injunction be upheld it will shortly be sued upon others and upon contracts not evidenced by notes, to all of which actions it has the same defense, if it has any defense at all, and that defense one which can only be made effective in equity in an action to which all the parties concerned are parties. The true test is not whether the plaintiff has a defense to the actions on the notes, but whether it can adequately avail itself of any defense it may have upon the law side of the court. (*Bomeisler* v. *Forster*, 154 N. Y. 229; *Lown* v. *Spoon*, 158 App. Div. 900; *McHenry* v. *Hazard*, 45 N. Y. 580; *Pfohl* v. *Simpson*, 74 id. 142.)

It is not an appropriate occasion on a motion of this character to undertake to pass upon the merits of the controversy further than to inquire whether the plaintiff has exhibited a defense worthy of serious consideration upon a deliberate trial. The foundation upon which all of the claims against the plaintiff rest consists of agreements said to have been made with one Bassick by one Moxham, some time president of the plaintiff, assuming to act in its behalf. By these agreements the plaintiff was made to undertake to pay to Bassick enormous commissions and profits upon contracts for war munitions to be manufactured by plaintiff for the French government. The

affidavits leave it in much doubt whether Bassick's services in this regard were either necessary or potent; but assuming that they were both, it is shown without the slightest attempt at contradiction that the commissions and profits thus agreed to be paid him, which ran up into millions of dollars, were many times in excess of the commissions and profits customarily paid to brokers and middlemen for obtaining for manufacturers similar contracts. The plaintiff does not in terms charge Bassick and Moxham with fraud, but the apparently extreme unreasonableness of the agreed compensation in itself suggests the existence of bad faith which, in a legal sense, is fraud.

It is claimed that the contracts were authorized by plaintiff's board of directors, and attention is called to a resolution of the board adopted on February 25, 1915, apparently, although not specifically, affirming an agreement to pay Bassick commissions on certain contracts theretofore obtained, but it did not by any means cover all that Bassick claims, nor any of the contracts thereafter made, the commissions and profits on which constitute a large part of the aggregate claims against plaintiff.

In my opinion, however, the fact that the board of directors had approved the contracts with Bassick, if in fact they had approved them, would not necessarily prevent a judicial scrutiny of the contracts at the suit of the company in behalf of the stockholders, for the directors are but the trustees for the stockholders and if they deal dishonestly or with undue extravagance with the property of their *cestui que trust* it is within the power and is the duty of the court of equity to grant relief. If the commissions agreed to be paid Bassick were so extravagantly and unusually large as they appear to be it may easily be found upon a trial that both Bassick and the directors were chargeable with notice and knowledge that the funds of the company were being misappropriated. (*First Nat. Bank* v. *Nat. Broadway Bank*, 156 N. Y. 459, 467.) " Where directors of a corporation, abusing their trust and acting illegally or in excess of their authority, adopt resolutions disposing of the property of the corporation, and enter into contracts or make conveyances thereunder, with the effect that

the corporation is deprived of its property without any adequate consideration, to the injury of the stockholders, a bill in equity will lie at the suit of the corporation to annul the resolutions in question and to rescind or set aside the contracts or conveyances made under their authority." (Black Rescission of Contracts, § 356.)

In my view the plaintiff has shown enough upon the uncontradicted facts to justify an appeal to equity, and since the defendants are amply protected by the undertakings given on the issue of the injunction I think it should be continued *pendente lite*.

CLARKE, P. J., concurred.

Order reversed, with ten dollars costs and disbursements, motion denied and temporary injunction vacated, with ten dollars costs.